**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Bruce D. FLEMING, Respondent.**

No. 99–1088.

Supreme Court of Iowa.

Nov. 17, 1999.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Bruce D. Fleming, Council Bluffs, pro se.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct (board) charged respondent, Bruce D. Fleming, with neglect and illegal fee-taking in connection with the probate of two estates. A division of the grievance commission, having heard the board's proof as well as Fleming's response, found the charges were established and recommended a thirty-day suspension. The matter is now before us for de novo review in accordance with Iowa Court Rule 118.10.

Given the financial penalties suffered by the estates' beneficiary because of Fleming's neglect, his disregard for rules and statutes respecting fees, his less than full cooperation with the board, and his history of reprimands for similar misconduct, we suspend Fleming's license to practice law for not less than six months.

**I. Background Facts and Proceedings.**

Bruce Fleming practices law in Council Bluffs, Iowa. This disciplinary action involves his representation of the executors in two separate—but related— estates. In February 1995, Fleming opened an estate for his former client, Mary Olsen, who died on September 20, 1994. Olsen's brother, Michael Ross, was named executor. He was also the sole beneficiary under Olsen's last will and testament. Not long after

Ross's appointment, in April 1995, he died. First Bank of Omaha was named executor of Ross's estate and successor executor in the Olsen estate.

Two trust officers from First Bank (now U.S. Bank) testified that "organizational turbulence" surrounding the bank's merger with a predecessor bank corporation in late 1995 and early 1996 led to some delay in the collection and inventory of assets in the two estates. By May 1996, however, the trust officer in charge was satisfied with the accuracy of the bank's accounting and urged Fleming, by phone and letter, to file the probate inventories and inheritance tax returns. Fleming failed to respond to repeated requests for action. Finally, in November 1996, the bank sought the counsel of another attorney, Richard Peterson, who agreed to take over the estates and conclude them if Fleming withdrew. The trust officer contacted Fleming, who reluctantly agreed to step down and thereafter cooperated fully with his successor.

Peterson's examination of the probate files led to the complaint in this case. He learned that in the Olsen estate no action had been taken beyond the filing of the report and inventory on December 29, 1995, showing assets of $96,438.10. Missing was the required thirty-day notice to beneficiaries, the oath and qualifications of First Bank as replacement executor, letters of appointment for the bank, and an amendment to the inventory increasing net estate assets to $123,404.76. The Iowa inheritance tax return, due within nine months following a decedent's date of death, had not been filed. The taxes due were unpaid and delinquent. A later computation revealed taxes payable of $9836.30 plus a ten percent late penalty fee of $983.63 and interest of $1706.

In the Ross estate even less had been accomplished. The probate file revealed that the will was admitted to probate and letters of appointment were issued to First Bank, followed by an application and order for an extension of thirty days to file the report and inventory. The order is dated December 28, 1995. No inventory was ever filed. The file also contained no proof of publication to creditors, notice to beneficiaries, or Iowa inheritance tax return. Once Peterson prepared the report and inventory, he determined the inheritance tax liability based on assets of $162,299.22 totaled $15,038.82, plus a penalty of $1503.88 and interest of $2364.83.

While making the necessary filings and preparing reports to close these estates, Peterson learned that the executor had paid Fleming attorney fees of $950 in November 1995, and $1000 in June 1996. No court orders approving such fees had been obtained. The trust officer, licensed in Nebraska, was unaware of Iowa Probate Rule 2(d) which permits partial fee distribution only with the approval of the court upon filing of the Iowa inheritance tax return. Fleming did not tell him about the rule.

The board charged Fleming with violations of the following provisions of the Iowa Code of Professional Responsibility for Lawyers: DR 6–101(A)(3) (lawyer shall not neglect a client's legal matter); DR 2–106(A) (lawyer shall not charge or collect an illegal fee); and DR 1–102(A)(1), (5), (6) (prohibiting lawyer from violating a disciplinary rule, or engaging in conduct prejudicial to the administration of justice or adversely reflecting on fitness to practice law). When contacted by the board regarding these complaints, Fleming responded with a brief letter and the promise of a fuller explanation within thirty days. No such follow-up occurred. His later answers to interrogatories and request for production were only prompted by order following a motion to compel. The board's complaint urges these failures as additional violations of DR 1–102(A)(5) and (6).

## II. Ethical Issues.

The burden rests upon the board to prove its disciplinary charges by a convincing preponderance of the evidence.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sather*, 534 N.W.2d 428, 430 (Iowa 1995). It has easily met that burden here. Although Fleming attempts to shift the blame for his neglect to the corporate executor, the record makes clear that he permitted several important deadlines to pass without any action whatsoever. He repeatedly failed to respond to the executor's inquiries. His failure to file the required inheritance tax returns on time resulted in the payment of substantial penalties and interest by the residuary beneficiary of the Ross estate. Such inattention to probate deadlines violates our code of professional responsibility and undermines the public's confidence in the legal system. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Winkel*, 542 N.W.2d 252, 254 (Iowa 1996).

Fleming admits he took fees without court order and in advance of earning them. This illegal fee-taking clearly violates DR 2–106(A). *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith*, 569 N.W.2d 499, 500 (Iowa 1997); *see* Iowa Code §§ 633.197, .198 (permitting reasonable fees "as may be determined by the court"); Iowa R. Prob. 2(d) (establishing timetable for payment of fee; one-half payable upon preparation of Iowa inheritance tax return).

Fleming's less-than-full response to the board's informal inquiry, combined with his failure to answer interrogatories or a request for production, reveals disrespect for the administration of justice and his colleagues who serve the disciplinary system, in violation of DR 1–102(5) and (6). *Committee on Prof'l Ethics & Conduct v. Pracht*, 505 N.W.2d 196, 199 (Iowa 1993).

The question is what sanction would be appropriate to address Fleming's ethical shortcomings. Important considerations include the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and our duty to uphold the integrity of the profession in the eyes of the public. *Committee on Prof'l Ethics & Conduct v. Havercamp*, 442 N.W.2d 67, 69 (Iowa 1989). Here, Fleming's neglect of legal matters entrusted to him resulted in unnecessary financial expense to the estates' beneficiary. His misconduct is compounded by the fact that he took unauthorized fees for services only incompletely rendered. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Winkel*, 599 N.W.2d 456, 459 (Iowa 1999) ("A lawyer who takes a fee before it is earned effectively misappropriates the client's funds."). His attempt to shift the blame elsewhere and ignore inquiries by the board reflects poorly on his fitness to practice law. And, finally, we are obliged to consider his history of two prior reprimands. *Committee on Prof'l Ethics & Conduct v. Leed*, 477 N.W.2d 390, 392 (Iowa 1991). Fleming was publicly reprimanded in 1994 for collecting excessive fees and was reprimanded again in 1998 for repeated failure to respond to notices of probate delinquencies. This record strongly suggests that the board's past leniency has not had the intended effect of moving Fleming toward higher standards of ethical practice. *See id.* (serial misconduct demands increasingly stern sanction so as not to frustrate goals of deterrence and restoring public confidence).

We therefore suspend Bruce Fleming's license to practice law in this state indefinitely, with no possibility of reinstatement for six months. This suspension shall apply to all facets of the practice of law. *See* Ct. R. 118.12. Upon application for reinstatement, the respondent shall furnish proof that he has complied with the notification and disengagement requirements of rules 118.13 and 118.18. As an additional condition of reinstatement, Fleming shall furnish proof that he has reimbursed the residuary beneficiary of the Olsen and Ross estates, Helen M. Mattison, for the

interest and penalties (totaling roughly $6558.34) paid by her as a result of Fleming's failure to file the Iowa inheritance tax returns when due. Costs are assessed to the respondent.

**LICENSE SUSPENDED.**