**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Alan N. WAPLES, Respondent.**

**No. 03–1968.**

Supreme Court of Iowa.

April 7, 2004.

Rehearing Denied April 23, 2004.

Norman G. Bastemeyer and Mark Schouten, Des Moines, for complainant.

Alan N. Waples of Wittkamp & Waples, Burlington, pro se.

LARSON, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint with our Grievance Commission charging Alan N. Waples with several ethical violations in connection with his handling of an estate and a custody case. The commission found several violations and recommended a thirty-day suspension with several conditions placed on any reinstatement. We affirm the findings of the violations but suspend the respondent's license

for a minimum of six months and place conditions on any reinstatement.

## I. *The Paul C. Jones Estate.*

Paul C. Jones died on July 25, 1996. Jones's sons, Gregory Jones and Jeff Jones, residents of California, were appointed coexecutors. The executors designated Waples as the attorney for the estate, and Waples opened the estate on July 29, 1996. The estate included several farms, farm products, and other assets with a value of approximately $1,300,000.

On October 7, 1996, Waples wrote to the executors and requested that they send attorney fees of $33,914.41 by overnight mail. The letter stated "I have completed the Estate Tax Return and the Inheritance Tax Return." This, as it developed, was not true. The executors mailed the requested fee to Waples, who had not earned the fees under our probate rules and who had not obtained an order of the court approving their payment. Waples deposited the estate check in his regular office account rather than in a trust account, holding out $914.01 in cash. The court order allowing fees was not signed by a district judge for several days. At the time the court approved payment, the respondent had not completed the services required before receipt of payment.

The federal estate tax return was prepared at some time showing it was signed by Waples on April 15, 1997. However, it was not sent to the executors for their signature until June 9, 1997, more than a month after the nine-month filing deadline. The return and payment of the tax were not remitted to the Internal Revenue Service until July 9, 1997. This resulted in penalties for late payment and late filing. The estate tax return was selected for audit, and on February 11, 1998, an auditor for the Internal Revenue Service wrote to Waples requesting documents and information for the purpose of the audit.

On July 1, 1998, the clerk of court issued a notice under Iowa Code section 633.32 advising the executors and Waples that they were delinquent in filing an interlocutory report due within eighteen months of the second publication of notice to creditors. On July 10, 1998, Waples filed an interlocutory report stating that the tax clearances should be received by October 31, 1998, and stating that the final report had already been prepared.

On August 3, 1998, Greg Jones contacted Waples about the penalties assessed by the Iowa Department of Revenue, and Waples replied that "this was the first time I had seen anything of these notices" and contended that the returns had been forwarded to the executors for payment within the time allowed by law.

On January 1, 1999, the IRS examiner wrote to Waples and stated that he had been waiting for eleven months to receive the documents he had requested earlier and complained that his repeated attempts to contact Waples by letter and phone had been unsuccessful. The auditor threatened that, if the required information was not provided by January 15, 1999, he would be "forced to pursue enforcement procedures provided for under federal law." The auditor mailed copies to the executors. At about this point, the executors began to contact the IRS auditor directly, reported that they were dissatisfied with Waples' representation of the estate and stated that "[w]e feel as though we have been left in the dark regarding much of the legal process." The auditor wrote to Waples advising him that there was additional federal estate tax due in the amount of $211,814.59 as well as $43,895.89 in penalties for failure to file and $1374.04 in penalties for failure to pay.

On November 3, 1999, the clerk of court sent a delinquency notice for the estate's failure to file a final report. In November 1999 the executors hired a law firm in Cedar Rapids to complete the estate work. Waples withdrew as attorney for the estate, which, by that time, had been open for more than three years. Despite that fact, no distributions had been made to the beneficiaries.

The Cedar Rapids firm completed the estate proceedings, filed amended tax returns, established a testamentary trust provided by the decedent's will, and distributed estate assets in accordance with the will. The estate paid the successor attorneys $25,000 in attorney fees. According to the commission's finding, the estate, when it was finally closed on August 28, 2002, had incurred substantial additional costs, including penalties and interest, because of Waples' mishandling of the estate.

## II. *The Michelle Olson Custody Matter.*

In June 2002 Waples was hired by Michelle Olson, who was the mother of a son born to her and Jessy Lee Hulett. The father filed a petition seeking joint custody, primary physical care, and temporary physical care of the child who was then in the custody of his mother. The court set a hearing on the father's petition for July 1, 2002. Waples filed a motion to dismiss the father's petition for failure to file supporting affidavits three days in advance of the hearing as required by a local rule. The court continued the hearing to allow time for the filing of those affidavits and reset the hearing for July 15, 2002. Under the local rule, Waples' client was also required to file affidavits prior to the hearing, but Waples failed to do so. He contends that he was relying on his legal assistant and

his client-mother to prepare and file the affidavits.

## III. *Violations.*

■ The respondent's handling of the Jones estate violated several provisions of our Code of Professional Responsibility. His collection of fees without completion of the required work and without court approval violated Iowa Court Rule 7.2(4), which requires, before payment of the first half of the fees, that the attorney have prepared federal and state death-tax returns. The remainder of the fees may be received when the final report is filed and costs have been paid. Iowa Ct. R. 7.2(4). However, as of the date the respondent obtained the entire fee, the final report had not been filed; in fact, most of the work in the estate remained to be done. Some requirements were not satisfied until the replacement attorneys became involved. Waples' lack of attention to tax matters resulted in substantial penalties and interest. His dilatory handling of the estate also delayed distribution of the estate assets. As of December 1999, when the substitute attorneys took over the estate, no distributions had been made.

We conclude that Waples' handling of the estate violated DR 1–102(A)(5) (a lawyer shall not "[e]ngage in conduct that is prejudicial to the administration of justice") and DR 1–102(A)(6) (a lawyer shall not engage "in any other conduct that adversely reflects on the [lawyer's] fitness to practice law"). The respondent's receipt of fees without court order and without earning them at the time they were paid violates DR 2–106(A). *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fleming,* 602 N.W.2d 340, 342 (Iowa 1999).

■ In the Olson matter, Waples' failure to timely file the affidavits resulting in their ultimately being stricken deprived the court of important information it

should have had in this custody matter regarding the father's potential for violence. Even more important, Waples' failure to file affidavits conceivably weighed in the court's decision on the merits of the case, as shown by its statement that it was "quite concerned that [Michelle Olson's] apparent inability to be responsible and follow through with her obligations in this legal cause." The fault was not Ms. Olson's, but was due to Waples' mishandling of the case.

We agree with the commission that Waples' conduct in the Olson case violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice), DR 6–101(A)(2) (lawyer shall not handle a legal matter without adequate preparation), and DR 6–101(A)(3) (neglect of client's legal matters).

## IV. Sanctions.

The commission recommends a thirty-day suspension, and we give that recommendation respectful consideration. However, in view of Waples' glaring failure in his handling of the Jones estate and his inattention to the Olson matter, we believe a more severe sanction is warranted.

■■■ While each disciplinary case is different and must be judged on its own facts, *Comm. on Prof'l Ethics & Conduct v. Bitter*, 279 N.W.2d 521, 524 (Iowa 1979), prior cases shed light on the question of the appropriate sanctions to be imposed. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Jay*, 606 N.W.2d 1 (Iowa 2000), an attorney who mishandled an estate, resulting in losses to the estate, and who had received a prior suspension and a public reprimand, was suspended for a minimum of one year. In *Committee on Professional Ethics & Conduct v. Coddington*, 360 N.W.2d 823 (Iowa 1985), the respondent had received fees that were excessive and received without court authorization. We suspended his li-

cense for a minimum of two years. *Id.* at 826. In *Committee on Professional Ethics & Conduct v. Martin*, 375 N.W.2d 235 (Iowa 1985), the attorney had "neglected and failed to carry out his duty as an attorney" in four estates. *Id.* at 236. We suspended his license for a minimum of one year. *Id.* at 239. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Fleming* the attorney had neglected matters and took fees without authorization. We suspended his license for a minimum of six months. 602 N.W.2d at 342. *Iowa Supreme Court Board of Professional Ethics & Conduct v. Pracht*, 656 N.W.2d 123, 124–25 (Iowa 2003), involved an attorney's neglect of an estate and failure to abide by our previous order that he refrain from practicing probate law unless he abided by certain restrictions we had placed on him. We suspended his license for a minimum of one year and barred him thereafter from handling probate matters until further order of this court. *Id.* at 126.

In view of the respondent's receipt of fees before they were earned and without court approval, his failure to timely comply with the requirements of federal and Iowa death-tax laws, his failure to make a timely distribution in the estate, and the attendant costs to the estate in late filing and late payment of taxes, together with the additional interest to the estate, the fees paid to his replacement attorneys, and his neglect of the Olson custody matter, we conclude the sanction should be more severe than that recommended by the commission.

We order the suspension of Alan Waples license for an indefinite period of time without any possibility of reinstatement for six months. This suspension applies to all facets of the practice of law. Iowa Ct. R. 35.12(3). On any application for reinstatement, the respondent shall establish that

he has not practiced law during the suspension and that he has in all other respects complied with the requirements of Court Rule 35.21. He shall also establish that he has reimbursed the estate, or its beneficiaries, for all the attorney fees received by him, with interest at the legal rate, from the date of their payment. In addition, following any reinstatement, the respondent shall not handle any probate matters unless he associates with a competent probate attorney approved by the district court. *See Pracht,* 656 N.W.2d at 126. Costs of this action are taxed to the respondent pursuant to Iowa Court Rule 35.25.

**LICENSE SUSPENDED.**