IN THE SUPREME COURT OF IOWA

 No. 133 / 05-1365

 Filed January 13, 2006

IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,

 Complainant,

vs.

MICHAEL GERARD REILLY,

 Respondent.

 On review of a report of the Grievance Commission.

 Review of findings and recommendation of Grievance Commission
concerning alleged ethical violations. LICENSE REVOKED.

 Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

 Kristopher K. Madsen, Council Bluffs, for respondent.

CARTER, Justice.
 This matter is before us on a review of the findings and
recommendation of the Grievance Commission concerning alleged ethical
violations by respondent, attorney Michael G. Reilly. The review is
undertaken pursuant to the provisions of Iowa Court Rule 35.10. The
commission found that respondent was guilty of a conversion of clients’
funds and had perpetrated a check-kiting scheme that caused a substantial
loss to one of the banks involved in the transaction. The Grievance
Commission recommended that Reilly be suspended from practice for a period
of three years. After reviewing the record and considering the arguments
presented, we conclude that the Grievance Commission’s recommendation is
inconsistent with the discipline that we have imposed in other cases in
which clients’ funds have been misappropriated. Consistency with our past
decisions and protection of the public warrants the revocation of the
offending attorney’s license.
 Michael G. Reilly is an attorney who has practiced law in
Council Bluffs for many years and has gained a favorable reputation as a
diligent lawyer. Respondent represented the parents of Jacob Reid, a child
who had sustained a serious eye injury. He diligently represented the
Reids in a claim against persons responsible for the injury, and ultimately
a settlement was arrived at under which Jacob Reid was to receive the sum
of $137,500. The settlement draft was received by respondent on
November 17, 2000, and he immediately deposited it in his firm trust
account. A few days prior to receipt of that draft, he had caused a
conservatorship to be opened for Jacob Reid and had been designated as
attorney for the conservatorship.
 Soon after receipt of the settlement funds, checks were issued from
the trust account of respondent’s law firm to the firm for the amount of
respondent’s contingent fee and the firm’s out-of-pocket expenses in
pursuing the case. After those funds had been withdrawn, a balance of
$99,736.75 remained in the trust account.
 In December 2000 and January 2001, respondent withdrew the entire
$99,736.75 balance of Jacob Reid’s funds from his firm trust account. The
two checks written in December totaling $9000 were drawn by respondent for
cash and signed by him. He has admitted that the proceeds were used for
his personal obligations. The January 2001 check was payable to First Star
Bank in the sum of $90,736.75. It was drawn by a firm bookkeeper and
signed by another member of respondent’s law firm based on respondent’s
representation that it was to be remitted to the conservator’s bank
account. Instead, respondent deposited that check in his personal banking
account.
 In August and September 2001, respondent endeavored to make
restitution of Jacob Reid’s funds by depositing $96,040 in a
conservatorship account for Jacob Reid that had been established at Salomon
Smith Barney, Inc.[1] A friend had agreed to loan respondent the funds
necessary to accomplish that purpose. Relying on that agreement,
respondent wrote a check on a personal bank account for $96,040 to Salomon
Smith Barney. Unfortunately, respondent’s friend was unable to loan him
the necessary funds, and the balance of his personal bank account at
Pinnacle Bank was not sufficient to cover the check. It was returned
unpaid.
 On September 24, 2001, respondent wrote a second check on his
personal bank account at Pinnacle Bank to Salomon Smith Barney, this time
in the amount of $96,070. Because he had deposited a check in Pinnacle
Bank in an amount sufficient to cover that withdrawal, the Pinnacle Bank
check cleared, and the conservatorship account received the funds. The
check deposited in respondent’s Pinnacle Bank account also cleared, but
First Star Bank, which had paid that check, was saddled with a $96,000
overdrawn account based on respondent’s deposit of an insufficient-funds
check in that bank.
 Respondent did not make restitution of First Star Bank’s loss for
over a year. In the meantime, First Star Bank had notified federal law
enforcement authorities of its loss. The resulting investigation resulted
in a letter from the United States attorney to our client security and
disciplinary commission revealing the facts that we have recited in this
opinion. Further investigation by the Iowa Supreme Court Attorney
Disciplinary Board confirmed those facts.
 Respondent has at all times conceded the conversion of Jacob Reid’s
funds that had been paid into his firm’s trust account. He has not
conceded any illegality with respect to the check overdraft at First Star
Bank based on his assertion that he believed he would have funds
forthcoming to cover the First Star Bank check before it was returned to
that bank for payment.
 Based on the transactions we have recited, the Grievance Commission
found that respondent had violated DR 9—102(A), which provides: “All funds
of clients paid to a lawyer or law firm . . . shall be deposited in one or
more identifiable interest-bearing trust accounts maintained as set forth
in DR 9—102(C).” We have previously held that this disciplinary rule is
violated in situations in which an attorney has deposited client funds into
his trust account and then withdrawn them for his personal use without
client permission. Comm. on Prof’l Ethics & Conduct v. Silver, 395 N.W.2d
877, 879 (Iowa 1986). The commission further found that respondent had
violated Disciplinary Rules 1—102(A)(1) (a lawyer shall not violate a
disciplinary rule), (3) (a lawyer shall not engage in illegal conduct), (4)
(a lawyer shall not engage in conduct involving dishonesty), and (6) (a
lawyer shall not engage in conduct that adversely reflects on his fitness
to practice law). The facts as agreed to by respondent establish a
violation of each of these disciplinary rules by a convincing preponderance
of the evidence.
 This court gives respectful consideration to the Grievance
Commission’s recommendation concerning the appropriate sanction for an
attorney’s ethical violations. Iowa Supreme Ct. Bd. of Prof’l Ethics &
Conduct v. Waples, 677 N.W.2d 740, 743 (Iowa 2004). However, on review of
those recommendations under Iowa Court Rule 35.10, we are free to impose a
lesser or greater sanction than the discipline recommended by the Grievance
Commission. Id.
 We have considered the misappropriation of a client’s funds by a
lawyer as being particularly reprehensible and, almost universally, calling
for a revocation of license. Iowa Supreme Ct. Bd. of Prof’l Ethics &
Conduct v. Anderson, 687 N.W.2d 587, 590 (Iowa 2004); Iowa Supreme Ct. Bd.
of Prof’l Ethics & Conduct v. Bell, 650 N.W.2d 648, 652 (Iowa 2002); Comm.
on Prof’l Ethics & Conduct v. Ottesen, 525 N.W.2d 865, 866 (Iowa 1994);
Comm. on Prof’l Ethics & Conduct v. Shepherd, 431 N.W.2d 342, 344 (Iowa
1988). Instances in which revocation has not been ordered for the taking
of a client’s funds have involved situations in which the attorney had a
colorable future claim to the funds or did not take the funds for his own
use. See, e.g., Iowa Supreme Ct. Bd. of Prof’l Ethics & Conduct v. Allen,
586 N.W.2d 383, 391 (Iowa 1998); Iowa Supreme Ct. Bd. of Prof’l Ethics &
Conduct v. Hansel, 558 N.W.2d 186, 192 (Iowa 1997); Comm. on Prof’l Ethics
& Conduct v. Rauch, 486 N.W.2d 39, 40 (Iowa 1992). We have not been
dissuaded from ordering revocation of license in situations in which the
embezzled funds have been returned prior to the discovery of the
misappropriation. Anderson, 687 N.W.2d at 590; Comm. on Prof’l Ethics &
Conduct v. Pappas, 313 N.W.2d 532, 533-34 (Iowa 1981). Revocation of the
offending attorney’s license has been imposed in a situation involving a
substantially smaller misappropriation than those occurring in the present
case. Comm. on Prof’l Ethics & Conduct v. Rowe, 225 N.W.2d 103, 104 (Iowa
1975) (client funds totaling $1500 placed in attorney’s personal checking
account—license revoked).
 Several highly regarded members of the local bar have attested to
respondent’s character, including his reputation for truth, veracity, and
honesty. Similar endorsements have been received from the local judges
before whom respondent has regularly practiced. We have no reason to doubt
that, before embarking on the downward spiral that produced the
transgressions now under consideration, respondent was all that these
proponents attest he was. His fall from grace was precipitated by an
uncontrollable gambling habit that left him constantly in need of funds.
Unfortunately, that is a matter which, although regrettable and cause for
sympathy, does not obviate the seriousness of the improper attorney conduct
that has occurred. See Iowa Supreme Ct. Bd. of Prof’l Ethics & Conduct v.
Lett, 674 N.W.2d 139, 143 (Iowa 2004) (revocation ordered as sanction for
misappropriation of funds motivated in part by gambling addiction). Nor
does the fact that respondent has sought and successfully received
counseling to alleviate his gambling addiction. Cf. Iowa Supreme Ct. Bd.
of Prof’l Ethics & Conduct v. Schatz, 595 N.W.2d 794, 796 (Iowa 1999)
(successful treatment for depression subsequent to misappropriation of
funds does not preclude revocation of attorney’s license).
 The misappropriation of client funds of which respondent has been
guilty would by itself warrant a revocation of his license. The reckless
check-kiting scheme undertaken in an effort to replace the funds that had
been taken is an aggravating factor. Even if respondent sincerely believed
that he would be able to obtain the necessary funds to cover the checks
that he had written, this was a reckless disregard for his true financial
position. That disregard caused a very substantial loss for the First Star
Bank, which was not repaid for more than a year. It is fortunate that
respondent has been able to make restitution to both Jacob Reid and the
First Star Bank. Circumstances may have been otherwise so as not to permit
him to do so. He was not free to take this gamble.
 After fully considering the matter now before us, we order that the
license of respondent, Michael G. Reilly, is revoked effective with the
filing of this opinion. Costs are assessed to respondent as provided in
Iowa Court Rule 35.25(1).
 LICENSE REVOKED.
 All justices concur except Larson and Wiggins, JJ., who take no part.
-----------------------
 [1]Respondent contends that the difference between this amount and the
total amount of funds that had been misappropriated equals the amount of
Jacob Reid’s medical expenses that were paid by respondent.