# IN THE SUPREME COURT OF IOWA

No. 11–0886

Filed January 13, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD**,

      Complainant,

vs.

**JAMES C. VAN GINKEL**,

      Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends a public reprimand. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Carlton G. Salmons, West Des Moines, for respondent.

**APPEL, Justice.**

This case shows once again how a respected member of the bar can become entangled in a web of ethical violations arising from the neglect of an estate in probate proceedings.

The Iowa Supreme Court Attorney Disciplinary Board charged attorney James Van Ginkel with multiple violations of our disciplinary rules in connection with the probate and closing of the estate of John Oxley. The Board charged that Van Ginkel engaged in neglect in connection with the estate; engaged in conduct that was prejudicial to the administration of justice; knowingly made false statements to the tribunal; and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation.

The grievance commission found Van Ginkel had engaged in neglect and had made at least one misrepresentation to the court. It also found that Van Ginkel had received both the first half and second half of the attorneys' fees prematurely in connection with the estate. Upon our review of the facts and law, we conclude Van Ginkel engaged in neglect and conduct prejudicial to the administration of justice, made a false representation to the court in connection with his neglect, and prematurely obtained attorneys' fees in the probate proceeding. Based on these violations, we conclude that a suspension for sixty days is the appropriate sanction.

## I. Background Facts and Proceedings.

On December 23, 2010, the Board filed its complaint against Van Ginkel alleging various ethical violations in connection with the estate of John Oxley. The Board amended its complaint once. After discovery, the commission held a one-day evidentiary hearing on March 21, 2011. At the hearing, the commission heard testimony and

received exhibits from the parties. The record of this proceeding and the evidence offered at the hearing demonstrate how the procrastination of an attorney in completing uncomplicated probate matters can ripen into serious disciplinary problems.

Van Ginkel has been a member of the Iowa bar since January 1980. He maintains a solo private practice in Atlantic, Iowa. He is involved in the general practice of law, including estate planning and probate. He has served as Cass County Magistrate from November 1984 to June 1985 and from August 2001 to the present.

Van Ginkel has been active in a variety of community activities. To his credit, he has been active in Boy Scouts, Girl Scouts, the local YMCA, Rotary, and economic development activities in a variety of capacities. He has served as president of the Southwest Iowa Bar Association and as president of the Cass County Bar Association.

Although Van Ginkel has generally been successful in the practice of law, he received two private admonitions relating to a lack of diligence in closing estates. He received a private admonition relating to probate delinquencies in 1987, and in 1994, he was admonished for failure to timely file a probate inventory.

Van Ginkel became friends with John Oxley through mutual service on the board of the Exchange State Bank in Collins, Iowa. John Oxley asked Van Ginkel to draft wills for himself and his wife, Ruth. The wills drafted by Van Ginkel provided that the assets of the first decedent would pour over into the John and Ruth Oxley Trust established for the benefit of the survivor. When the survivor passed away, the trust assets were to be divided and given to four beneficiary nieces.

John Oxley died on October 28, 2005. Upon John's death, Van Ginkel opened a probate estate. The Exchange State Bank of Collins

was appointed executor for the estate. Gary Hested, a trust officer at that bank, served as executor of the estate and as trustee for the John and Ruth Oxley Trust. Ruth Oxley died on October 4, 2006, and her estate was opened shortly thereafter.

Upon John's death, the assets in his estate poured over into the John and Ruth Oxley Trust for the benefit of the survivor as contemplated, and upon Ruth's death, the assets of the trust were timely distributed to the beneficiaries. While the estate of Ruth Oxley was timely closed, the estate of John Oxley remained open for almost five years, well in excess of the three-year statutory limitation. *See* Iowa Code § 633.473 (2005) (requiring final settlement to be made within three years).

The Board charged Van Ginkel with a violation of rule 32:1.3 (diligence and promptness) and rule 32:8.4(d) (conduct prejudicial to the administration of justice) based on seven notices of delinquencies in the relatively uncomplicated estate. Van Ginkel's dilatory conduct caused one of Ruth's beneficiaries, Marcia Moore, to contact Judge Ruth Klotz directly to try to determine why John's estate had not been closed. Judge Klotz responded thoughtfully to her and ultimately wrote directly to the estate's executor in the hope of receiving necessary waiver and tax clearances to close the estate.

While the estate was not timely closed, Van Ginkel did succeed in obtaining his fees in a timely fashion. In an application for first-half fees filed in February 2007, Van Ginkel, in order to comply with Iowa Probate Rule 7.2(4), stated that the inheritance tax return had been "prepared." *See* Iowa Ct. R. 7.2(4) ("One half of the fees for ordinary services may be paid when the . . . Iowa inheritance tax return . . . [is] prepared."). The evidence showed, however, that at the time he made the representation,

Van Ginkel did not have the funeral expense information necessary to complete schedule J on the inheritance tax return. Given these facts, the Board charged Van Ginkel with prematurely withdrawing his first-half fees in violation of rule 32:8.4(d).

Van Ginkel also obtained second-half fees in December 2007. In his application in support of the fees, Van Ginkel stated that a final report had been filed with the court. All costs of the estate, however, had not been paid. Instead, Van Ginkel placed $2000 in trust in order to cover the anticipated costs. The Board charged that his withdrawal of second-half fees violated rule 7.2(4), which requires that the costs of the estate "have been paid" prior to receiving second-half attorneys' fees and, as a result, violated rule 32:8.4(d).

The Board also charged Van Ginkel with making a number of false statements and/or misrepresentations in documents he filed in the estate in violation of rule 32:3.3(a)(1) (knowing false statement to a tribunal) and rule 32:8.4(c) (misrepresentation). The Board charged that Van Ginkel in the November 20, 2007 final report misrepresented the status of obligations related to taxes, claims, and attorneys' fees. The Board further claimed that Van Ginkel's representation in a July 31, 2008 interlocutory report that the Iowa estate income tax return had been filed was false. The Board also asserted Van Ginkel made a false representation in the July 30, 2009 interlocutory report when he stated that revised tax returns for the estate had been prepared and submitted to the executor for review. Finally, the Board maintained that statements in a draft order regarding an affidavit for publication and relating to costs were false.

Based on the evidence presented, the commission entered its findings of fact and conclusions of law on June 13, 2011. The

commission found that Van Ginkel had neglected to close the estate in a timely fashion and that his conduct caused the district court to send numerous delinquency notices and ultimately required the intervention of Judge Klotz to close the estate. While the commission found that Van Ginkel had not, in fact, filed the affidavit of publication as represented to the court, it found this error to be a result of a mistake and not a knowing misrepresentation. The commission, however, found that Van Ginkel in the July 31, 2008 interim report knowingly misrepresented that the tax return had been filed. In connection with this finding, the commission specifically found the testimony of Van Ginkel's staffer credible and that of Van Ginkel not credible. The commission also found that Van Ginkel received his first- and second-half fees prematurely.

As a result of its findings, the commission concluded that Van Ginkel violated rule 32:1.3, rule 32:8.4(d), rule 32:3.3(a)(1), and rule 7.2(4). In light of the violations, the commission recommended a public reprimand for Van Ginkel.

The Board urges us in this proceeding to impose a suspension of at least thirty days. The Board suggests that the seriousness of the violations justifies a harsher sanction than a public reprimand.

Van Ginkel recognizes that if he had, in fact, engaged in the misrepresentations claimed by the Board, a sanction more substantial than public reprimand would be warranted. But Van Ginkel asserts that he did not engage in any knowing misrepresentations or additional misconduct. As a result, he urges us to reject suspension and to follow the recommendation of the commission to impose a public reprimand.

## II. Standard of Review.

In disciplinary proceedings, our review of the factual findings of the grievance commission is de novo. Iowa Ct. R. 35.10(1). While the court gives respectful consideration to the commission's findings, it is not bound by them. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004). The burden of proof is on the Board to prove charges by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kress*, 747 N.W.2d 530, 537 (Iowa 2008). This burden is higher than the burden in most civil cases, but lower than in a criminal prosecution. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Evans*, 537 N.W.2d 783, 784 (Iowa 1995). Upon proof of misconduct, the court may impose a lesser or greater sanction than recommended by the commission. *Lett*, 674 N.W.2d at 142.

## III. Discussion of Alleged Violations.

**A. Neglect.** Rule 32:1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. The language of the rule is somewhat different from its predecessor, DR 6–101(A)(3), which provided that "[a] lawyer shall not . . . [n]eglect a client's legal matter." Iowa Code of Prof'l Responsibility DR 6–101(A)(3). Notwithstanding the linguistic differences, we have typically cited neglect cases under DR 6–101(A)(3) as precedent for the interpretation and application of rule 32:1.3 in cases involving probate matters. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 495 (Iowa 2010). In this case, neither party has suggested that the current rule should be interpreted or applied in a fashion different from its predecessor.

In our cases involving rule 32:1.3 and its predecessor, we have recognized that a violation cannot be found where the acts or omissions complained of are inadvertent or the result of an error of judgment made in good faith. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 812 (Iowa 2007). Thus, an ethical violation does not typically occur from one missed deadline, but arises when a lawyer "repeatedly fail[s] to perform required functions as attorney for the executor, repeatedly fail[s] to meet deadlines, and fail[s] to close the estate within a reasonable period of time." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002). Neglect involves "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Lickiss*, 786 N.W.2d at 867 (citation and internal quotation marks omitted).

It is obvious from the record here with seven probate delinquencies in one estate that the Board has established by a convincing preponderance of the evidence that Van Ginkel's acts and omissions amount to a "consistent failure" to perform the duties and responsibilities of an attorney in the estate of John Oxley in violation of rule 32:1.3. Van Ginkel admits that he was "pokey" and "dilatory" in connection with the estate. We agree. There is simply no excuse for the repeated failure of Van Ginkel to perform the necessary work on the John Oxley estate and to close this relatively uncomplicated estate well after the three-year statutory deadline in Iowa Code section 633.473.

**B. Conduct Prejudicial to the Administration of Justice.**

1. *Introduction.* Rule 32:8.4(d) provides, in relevant part, that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct

32:8.4(d). The predecessor rule, DR 1–102(A)(5), is virtually identical to the current rule. *See* Iowa Code of Prof'l Responsibility DR 1–102(A)(5).

We have held that rule 32:8.4(d) and its predecessor provide a basis for a violation when an attorney's conduct hampers " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely' by violating the well-understood norms and conventions of the practice of law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)).

The Board alleges Van Ginkel violated rule 32:8.4(d) in three respects. First, the Board contends that the delays in the estate, the repeated delinquency notices, and the necessity of Judge Klotz's intervention demonstrate a violation of the rule. Second, the Board contends that Van Ginkel violated the rule by obtaining signatures from other judges in the state rather than from Judge Klotz, thereby impeding the ability of Judge Klotz to close the estate. Third, the Board contends that Van Ginkel violated the rule by prematurely withdrawing fees from the estate.

2. *Probate delinquencies.* In a number of cases involving probate neglect, we have held that a finding of neglect and conduct prejudicial to the administration of justice can exist alongside each other. *Netti*, 797 N.W.2d at 598, 605; *Lickiss*, 786 N.W.2d at 867; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 380–81 (Iowa 2007).

Independent of neglect, the Board established by a convincing preponderance of the evidence that Van Ginkel's multiyear procrastination in the closing of the estate amounted to conduct prejudicial to the administration of justice. Van Ginkel's conduct caused the district courts to issue seven delinquency notices. *See Iowa Supreme*

*Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 699 (Iowa 2008) (stating use of clerk's office as a "private tickler system" is conduct prejudicial to the administration of justice). Concerns expressed by Marcia Moore arising out of the delays caused Judge Klotz to correspond thoughtfully with Marcia Moore about the file status and to contact executor Gary Hested directly to encourage closure of the estate. The Board has established that valuable judicial and staff resources were expended on issuing orders, extending deadlines, and cleaning up the probate proceedings. The expenditure of judicial branch resources reflected in this file was unnecessary and arises to a violation of rule 32:8.4(d). *See Netti,* 797 N.W.2d at 605; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson,* 792 N.W.2d 674, 681 (Iowa 2010); *Lickiss,* 786 N.W.2d at 867.

3. *Judge shopping.* We next address the Board's claim that Van Ginkel engaged in impermissible judge shopping in violation of the rule. It was undisputed that Van Ginkel obtained orders relating to fees and to extending the time to close the estate from several district court judges outside of Polk County. The Board cites the testimony of Judge Klotz, who understandably observed that Van Ginkel's obtaining court orders from other district court judges "made things more difficult" in her oversight of the file.

Under currently applicable law, however, district court judges have statewide jurisdiction regarding probate matters. *See* Iowa Code § 633.10. Thus, each of the district court judges from whom Van Ginkel obtained orders had the authority to enter them. There has been no allegation that Van Ginkel made any misrepresentations to any of the judges in connection with the orders. While the judges who signed the orders did not have a court file, Van Ginkel testified that he ordinarily

brought his copy of the file with him when he sought probate orders. In addition, a district court judge presented with a request for a probate order may defer action until there is an opportunity to review the file. We decline the invitation of the Board to find an ethical violation when an attorney approaches a judge seeking an order that the judge has authority to enter.

4. *Premature withdrawal of fees.* Finally, we address the Board's claim that Van Ginkel prematurely withdrew fees in violation of the rule.[1] We have held that the premature withdrawal of probate fees amounts to conduct prejudicial to the administration of justice in violation of rule 32:8.4(d). *See, e.g., Ackerman,* 786 N.W.2d at 496–97.

The substantive rule regarding payment of probate fees provides:

> **7.2(4)** One half of the fees for ordinary services may be paid when the federal estate tax return, if required, and Iowa inheritance tax return, if required, are prepared. When a federal estate tax return is not required, the one-half fee may be paid when the Iowa inheritance tax return is prepared or, when it is not required, when the probate inventory required by the Iowa Probate Code is filed. The remainder of the fees may be paid when the final report is filed and the costs have been paid. The schedule for paying fees may be different when so provided by order of the court for good cause.

Iowa Ct. R. 7.2(4).

The Board first asserts that Van Ginkel prematurely withdrew the first-half fees in February 2007. The Board asserts that Van Ginkel had not "prepared" the inheritance tax return as required by rule 7.2(4). Van Ginkel asserts that he had, in fact, prepared the inheritance tax return, but had not filed it.

---

[1]The Board does not allege a violation of rule 32:1.5(a), which prohibits collection of fees in violation of law. *See Lickiss,* 786 N.W.2d at 867–68. As a result, we do not address any potential violation of this rule.

On this issue, we agree with the commission that the Board proved premature withdrawal of fees. Van Ginkel is correct that rule 7.2(4) does not require the inheritance tax return to be filed—it only requires that it be "prepared." As Judge Klotz observed, a prepared return might not be filed contemporaneously with a request for fees when it is necessary to liquidate assets advantageously to meet tax obligations or to obtain a necessary signature on the paperwork. But the term "prepared" in rule 7.2(4) means completed. We do not believe an incomplete tax return is sufficient under the rule to withdraw first-half fees. While it is true that the funeral expenses and schedule J did not affect tax liability in this case, Van Ginkel nonetheless plainly desired to have this information and include it in the inheritance tax return before filing.

While it may seem like we are slicing and dicing here, we see no alternative if rule 7.2(4) is to have any practical meaning. We are not prepared to allow partially prepared returns, somewhat incomplete returns, or nearly complete returns—even if the absent information does affect tax liability—to meet what we view as a bright-line test established by rule 7.2(4). Otherwise, whether a fee could be obtained would be a fact-driven and unpredictable process, a result which would seriously undermine the purpose of the rule, namely, "to promote the efficient administration of estates to ensure that the work [is] done prior to an attorney being paid." *Ackerman*, 786 N.W.2d at 496.

The Board next asserts that Van Ginkel prematurely obtained his second-half fees in December 2007. While the Board concedes that a final report had been filed as required by rule 7.2(4), it asserts that the costs of the estate had not been paid. Specifically, the Board notes that more than $1000 in court costs was not paid until August 18, 2010, and October 29, 2010. Van Ginkel counters that it was impossible to state at

the time of the final report that all costs had been paid because the costs of transcribing the final order in Jasper and Story Counties were unknown and that the best approach was simply to file the final report and reserve sufficient funds to meet the costs once they were ascertained. Yet, Van Ginkel testified that he called the clerk's office and obtained an estimate of $1000 in costs to close the estate.

While we are again asked to make a technical call, we agree with the commission that the Board has made its case on this issue. Van Ginkel offers an explanation for why costs were not paid, but his explanation does not satisfy the requirement of the rule. We have previously found a disciplinary violation when an attorney obtained a fee payment when costs were not paid. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 282–83 (Iowa 2009); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carty*, 738 N.W.2d 622, 624 (Iowa 2007); *Rickabaugh*, 728 N.W.2d at 381. While Van Ginkel did reserve funds in his trust account to cover the costs, setting funds aside in a trust account is not the same as paying the costs. Although the transgression, like the violation with respect to first-half fees, is less substantial than in many of our cases, *see, e.g.*, *Rickabaugh*, 728 N.W.2d at 381, we conclude that Van Ginkel violated rule 32:8.4(d) by prematurely receiving his second-half fee without payment of court costs.

**C. Knowingly Making False Statement to a Tribunal and Engaging in Conduct Involving Misrepresentation.**

1. *Introduction.* Rule 32:3.3(a)(1) provides, in relevant part, "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal." Iowa R. Prof'l Conduct 32:3.3(a)(1). Its predecessor, DR 7–102(A)(5), is similar. *See* Iowa Code of Prof'l Responsibility DR 7–102(A)(5) (prohibiting a lawyer from "[k]nowingly mak[ing] a false

statement of law or fact"). The term "knowingly" as used in rule 32:3.3(a)(1) denotes "actual knowledge of the fact in question." Iowa R. Prof'l Conduct 32:1.0(f). Actual knowledge "may be inferred from circumstances." *Id.*

Rule 32:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* r. 32:8.4(c). We have stated in a number of cases involving misrepresentations to the court in probate proceedings that reckless disregard for the truth is sufficient to establish misrepresentation for purposes of this rule. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 818 (Iowa 2007); *Grotewold*, 642 N.W.2d at 293.

2. *November 20, 2007 final report.* We first consider the alleged false statement in connection with the November 20, 2007 final report. The Board asserts that Van Ginkel knowingly made a false statement by declaring in the final report that (1) all statutory obligations had been met related to taxes, (2) all statutory obligations related to claims had been met, and (3) all executor and attorneys' fees had been paid.

We first address the Board's allegation that Van Ginkel made a false statement in the November 20, 2007 final report regarding statutory obligations and taxes. Paragraph ten of the final report declared, "All statutory requirements relating to taxes have been fully complied with."

The contents of a final report are governed by Iowa Code section 633.477. Among other things, section 633.477 requires the personal representative to include in the final report "[a] statement as to whether or not all statutory requirements pertaining to taxes have been complied with." Iowa Code § 633.477(10). Further, Iowa Code section 422.27 provides that a final report shall not be allowed unless the court finds

that "all taxes imposed by this division upon the personal representative, which have become payable, have been paid, and that all taxes which may become due are secured by bond or deposit, or are otherwise secured." *Id.* § 422.27(1).

We have previously found ethical violations in connection with false statements made to a tribunal in connection with final reports. For instance, in *Iowa Supreme Court Attorney Disciplinary Board v. Humphrey*, 738 N.W.2d 617 (Iowa 2007), and *Grotewold*, we found professional misconduct where an attorney falsely stated that a tax return had been filed and/or a tax clearance had been obtained. *Humphrey*, 738 N.W.2d at 620; *Grotewold*, 642 N.W.2d at 293.

Van Ginkel stated in his final report that "all statutory requirements related to taxes have been fully complied with and there are no income, estate, or inheritance taxes due from decedent's estate or from the Executor." He further testified that no estate taxes were due or would become due because the assets of the estate poured over into the John and Ruth Oxley Trust. It is undisputed that at the time this statement was made the Iowa estate income tax return had not been filed. The Board seems to believe that there was a false representation because the estate income tax return was not filed.

Van Ginkel testified that at the time he filed the final report, he had complied with all statutory obligations relating to taxes. The Iowa estate income tax return was not yet due under applicable statutes.

The Board cites no specific statute of which Van Ginkel failed to comply with at the time of the filing of the November 20, 2007 final report. Instead, the Board fast-forwards to 2010, noting that at that time—after several delinquency notices—Van Ginkel finally filed the final estate income tax return and obtained the certificate of acquittances

from tax authorities.  The question, however, is not what happened later, but whether Van Ginkel knowingly made a false statement at the time he filed the final report.  Based upon our review of the record, we conclude that the answer to this question is no and, as a result, no ethical violation occurred.[2]

We next consider whether Van Ginkel made a misrepresentation in the November 20, 2007 final report related to claims.  Paragraph eleven of the final report stated that "the Executor has complied with all statutory requirements pertaining to claims."  The thrust of the Board's charge is that the affidavit of publication was not on file with the court and that, as a result, the claims process was flawed.  Van Ginkel, however, plausibly testified that publishers in Cass County routinely filed the affidavit of publication without a specific request to do so.  He therefore assumed that the *Altoona Herald* would do the same.  The Board did not rebut this testimony.  Based on the limited record developed in this case, we conclude that the Board has failed to show by a convincing preponderance of the evidence that Van Ginkel knowingly made a false statement to a tribunal under rule 32:3.3(a)(1) or that he acted in reckless disregard of the truth under rule 32:8.4(c) in connection with the statement regarding claims.

Finally, we consider the Board's charge that Van Ginkel committed an ethical violation by representing that the executor and attorneys' fees had been paid.  In paragraph twelve, Van Ginkel asserted that "[a]ll Executor and attorneys fees previously allowed by the court have been

---

[2]This does not mean, of course, that the district court is obligated to accept a final report that does not include a final estate income tax return and/or tax acquittance or that an estate should be closed without it.  The question of what is required to close an estate is not before us.  The sole question is whether Van Ginkel knowingly made a false statement in his final report.

paid." The Board's theory is that the fees were paid prematurely and that therefore a misstatement had been made in paragraph twelve. We do not find the Board's position convincing. The statement is literally true, namely, the fees previously approved by the court were paid. There is no ethical violation inherent in this statement.

3. *July 30, 2008 interlocutory report.* We now consider whether Van Ginkel knowingly made a false statement in connection with an interlocutory report filed with the court on July 31, 2008. In the interlocutory report, Van Ginkel stated that "the tax return for the estate was filed. We are currently waiting on receiving the income tax acquittance." It is undisputed, however, that the Iowa estate income tax return had not been filed as of July 31, 2008.

Van Ginkel's defense is that his staff made an error based on a telephone conversation made while Van Ginkel was on vacation. The staffer, however, testified that she drafted the report based on an audio tape. The language Van Ginkel claims he dictated is not very close to that which actually appeared in the July 31, 2008 interlocutory report.

The substantial discrepancy between what Van Ginkel claims he dictated and what appears in the July 31, 2008 report gives us pause. There are at least two errors in the report as filed. The first sentence states that the tax return for the estate has been filed. This was not true. The second sentence then states that the estate is "currently" awaiting receipt of the tax acquittance. This is not true, either, as the estate could not be "currently waiting" on an income tax acquittance when the tax return had not yet been filed. To the extent there is a he said/she said flavor to the dispute, the commission determined that Van Ginkel's staffer was credible and that the explanation of the

misrepresentation was not. Thus, based on the testimony of the two key witnesses, the balance tips towards the Board's position.

The Board's position finds further support in communications between Van Ginkel and Marcia Moore that were roughly contemporaneous with the challenged filing. In a July 18, 2008 communication with Marcia Moore, Van Ginkel stated that all that was needed to close the estate was "a clearance from the [department of revenue] and . . . the final court order." This statement falsely implied that the Iowa estate tax return had been filed and falsely implied that an acquittance is in the offing. A similar implication is present in a statement made to Ms. Moore on November 20, 2008, when he stated that he had met with the revenue officials and that "[t]hings went fine, we should have the needed paper in '[four] to six weeks.'" These misrepresentations are parallel to those that appear in the July 28, 2008 interlocutory report.

Further, when correspondence from Judge Klotz on February 3, 2010, indicated that the only remaining matter in the estate was the receipt of an income tax acquittance, Van Ginkel did not correct her, even though he admitted receiving and reading the letter.

Based on the above, we conclude that the Board has proved by a convincing preponderance of the evidence that Van Ginkel knowingly made a false statement to a tribunal in the July 31, 2008 interlocutory report in violation of rule 32:3.3(a)(1).

4. *July 30, 2009 interlocutory report.* Next, we consider alleged misrepresentations made in connection with an interlocutory report filed by Van Ginkel on July 30, 2009. The Board charges that the statement in the July 30, 2009 interlocutory report that "revised tax returns for the estate have been prepared and submitted to the executor for review and

signature" amounted to a false misrepresentation. Van Ginkel testified that he had presented the tax return to Hested but found an error and retrieved it from his desk to correct it. The record is silent regarding when the return was retrieved and when it was resubmitted to the executor. Without this chronology, it is not possible to determine the veracity of the statement. We therefore conclude that the Board has failed to meet its burden on this issue under any theory by a convincing preponderance of the evidence.

5. *May 19, 2010 draft order.* Finally, we turn to alleged false statements in a May 19, 2010 order signed by Judge Klotz. The Board maintains that the order had been prepared by Van Ginkel and falsely states that the affidavit of publication was on file. Further, the Board challenges the statement in the order that all costs had been paid or otherwise disposed of.

We reject the Board's position with respect to the March 19, 2010 draft order. We do not believe the statement regarding the affidavit may be characterized as an ethical violation. Further, the notion that costs were "paid or otherwise disposed of" is not precise, but is essentially correct. Van Ginkel had set aside more than enough funds in his trust account to satisfy outstanding expenses.[3]

## IV. Determination of Appropriate Sanction.

Before we determine the appropriate sanction, we consider:

[T]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public

---

[3]The Board below asserted that Van Ginkel violated rule 32:8.4(c) in his communications with Marcia Moore. The Board further suggests that Van Ginkel failed to respond to a lawful demand from the Board in violation of rule 32:8.1. Neither of these charges, however, was raised in the first amended complaint. We decline to address them. *See Rickabaugh*, 728 N.W.2d at 380 n.3; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 410 n.1 (Iowa 2005).

confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008). The form and extent of the sanction "must be tailored to the specific facts and circumstances of each individual case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009) (citation and internal quotation marks omitted).

With these principles in mind, we now turn to the question of appropriate sanction. We begin by considering the conduct. In cases involving neglect, the parties recognize that sanctions typically range from a public reprimand to a suspension of up to six months. *See Lickiss*, 786 N.W.2d at 868. As Van Ginkel correctly points out, there have been a number of cases where public reprimands have been found sufficient. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 207 (Iowa 2007) (imposing public reprimand for failure to close an estate for four years and failure to account to client); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Parker*, 558 N.W.2d 183, 186 (Iowa 1997) (concluding public reprimand was appropriate sanction for failure to close two estates, one for eleven years, one for seven years); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sather*, 534 N.W.2d 428, 431 (Iowa 1995) (holding failure to close father's estate which was open for nearly eighteen years and failure to respond to the Board warranted a public reprimand).

In cases involving multiple instances of neglect, other additional violations, or a history of past disciplinary problems, however, the sanction has typically involved a suspension for some length of time. In cases involving neglect in one or two cases and other misconduct such as misrepresentations associated with the neglect, the suspensions have

been in the range of three months. *See Ackerman*, 786 N.W.2d at 497–98 (holding neglect in two estates, accompanying multiple misrepresentations, and early receipt of fee required a ninety-day suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61–62 (Iowa 2009) (holding neglect in two cases, multiple misrepresentations, and the early collection of fee required a three-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 669–70 (Iowa 2008) (holding neglect in three cases, misrepresentation associated with neglect, failure to account to a client, and failure to respond to Board required a four-month suspension). In other cases where the pattern of misconduct has been more extensive, suspensions have typically been for a longer period of time. *See Wagner*, 768 N.W.2d at 288–89 (concluding neglect in multiple cases, improper withdrawal of fees in probate, failure to return unearned fees, misrepresentations to court and clients required a six-month suspension); *Humphrey*, 738 N.W.2d at 620–21 (holding neglect in six estates, with accompanying misrepresentations to court, and three instances of depositing unearned fees in business accounts required a six-month suspension).

In this case, we have found neglect, premature collection of fees, and a false statement to a tribunal. The neglect is inexcusable but unfortunately is not uncommon in our disciplinary cases. The premature withdrawal of fees here is rather technical. However, the knowing misrepresentation is very troublesome and is a factor supporting suspension. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rauch*, 650 N.W.2d 574, 578–79 (Iowa 2002).

In considering an appropriate sanction, we also consider the need to uphold public confidence in the judicial system and the reputation of

the bar as a whole. This case illustrates the importance of these concepts. The persistent delays in the closing of the estate gave rise to concerns on the part of Marcia Moore that Van Ginkel might be stealing money from the estate. This, of course, was not true. Nonetheless, in an age where citizens may regard courts and lawyers with cynicism, the need for lawyers to perform their functions consistent with our ethical rules is of great importance to the bar and the judicial system generally.

Before coming to a definitive conclusion on proper sanction, however, we consider mitigating and aggravating factors. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 506 (Iowa 2011).

Van Ginkel points out that there was no harm to the estate because of his transgressions. The lack of harm is a significant mitigating factor. *Casey*, 761 N.W.2d at 61. There is no dispute that the four beneficiaries of the Ruth Oxley estate timely received their inheritances on August 29, 2007.

Van Ginkel submitted evidence that he had a solid reputation and respect in the legal community generally. His reputation as a lawyer should have some bearing on our sanction. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 408 (Iowa 2007).

Further, it is apparent that at the time of the ethical violations, Van Ginkel was experiencing personal stress related to his mother's death and his father's ill health. There is no evidence, however, that Van Ginkel suffered from clinical depression. *See Marks*, 759 N.W.2d at 332 (noting depression is a mitigating factor); *Grotewold*, 642 N.W.2d at 295–96 (same). While Van Ginkel was no doubt under considerable stress, stress is an ordinary part of legal practice. In any event, while personal issues may be a factor in determining the appropriate sanction, they do not excuse ethical violations. *Iowa Supreme Ct. Att'y Disciplinary*

*Bd. v. Moonen*, 706 N.W.2d 391, 402 (Iowa 2005); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman*, 603 N.W.2d 600, 604 (Iowa 1999). Moreover, while personal stress may relate directly to neglect, it has little causal relationship to misrepresentations. *See Grotewold*, 642 N.W.2d at 295.

We now turn to aggravating factors. Van Ginkel suggests that his two prior admonitions cannot be considered an aggravating factor. He contends that we have developed two contradictory lines of cases on the issue of private admonitions. According to Van Ginkel, in one line of cases, we have indicated that a private reprimand is not discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 43 (Iowa 2011) (stating an admonition does not amount to discipline); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Buchanan*, 757 N.W.2d 251, 254 (Iowa 2008) (same); *Comm. on Prof'l Ethics & Conduct v. Zimmermann*, 522 N.W.2d 619, 621 (Iowa 1994) (same); *Comm. on Prof'l Ethics & Conduct v. Liles*, 430 N.W.2d 111, 113 (Iowa 1988) (observing that professional admonitions are something less than actual discipline). In another line of cases, Van Ginkel claims we have taken an inconsistent position, namely, that private reprimands may be a factor in determining appropriate sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 589 (Iowa 2011) (stating prior admonitions are aggravating circumstances that relate directly to issue of sanctions).

We do not view our cases as inconsistent. Private reprimands are not discipline. Yet, private reprimands do put an attorney on notice of the ethical requirements. We find that the two prior reprimands should have put Van Ginkel on clear notice, if any was needed, that neglect of an estate through lack of timeliness could amount to an ethical violation. We therefore consider his two prior admonitions for conduct similar to

that in this case as an aggravating factor on the question of appropriate sanction. The repeated neglect in the file is not excusable, particularly after Van Ginkel had received two private admonitions for similar conduct. His prior reprimands, though somewhat dated, are an aggravating factor.

If we were dealing only with neglect in a single estate, a public reprimand might be appropriate. *See Dunahoo*, 730 N.W.2d at 207; *Parker*, 558 N.W.2d at 186; *Sather*, 534 N.W.2d at 431. But this case involves not only neglect and early receipt of fees, but also false statements to a tribunal. A knowing misrepresentation to the court is a particularly disturbing factor. *Rauch*, 650 N.W.2d at 578–79. His effort to shift the blame to an assistant does not reflect well on him. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fleming*, 602 N.W.2d 340, 342 (Iowa 1999). As a result, we conclude that a suspension of sixty days is appropriate to provide adequate deterrence and protect the reputation of the bar, particularly in light of the seriousness of the offenses.

### V. Conclusion.

For the above reasons, we suspend the license of Van Ginkel to practice law in this state for an indefinite period of time with no possibility of reinstatement for sixty days. The suspension applies to all facets of the practice of law provided by Iowa Court Rule 35.12(3). The suspension also applies to any service as a judicial magistrate. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 704 (Iowa 2006). The costs of this proceeding are taxed against Van Ginkel pursuant to Iowa Court Rule 35.26(1).

**LICENSE SUSPENDED.**