**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Lance GROTEWOLD, Respondent.**

No. 01–1430.

Supreme Court of Iowa.

Feb. 27, 2002.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

John J. Scieszinski, Des Moines, for respondent.

CADY, Justice.

This case is before us on the report of a division of the Iowa Supreme Court Grievance Commission. The Commission found Lance Grotewold violated the Iowa Code of Professional Responsibility by neglecting client matters, making misrepresentations to the district court, and failing to timely respond to the Iowa Supreme Court

Board of Professional Ethics and Conduct. The Commission recommended a public reprimand. On our consideration of the matter, we find Grotewold violated the Code of Professional Responsibility as alleged, and we suspend his license to practice law for sixty days.

## I. Commission Report.

Lance Grotewold was licensed to practice law in Iowa in 1986, and he has practiced in Oskaloosa since that time. He is married and has two daughters. One daughter is in college and the other daughter is in high school. Grotewold has generally enjoyed a good reputation as a lawyer, although he is known to be slow in meeting deadlines. He is both affable and casual in the manner he practices his profession. He has never been publicly disciplined in the past for unethical conduct.

The complaint against Grotewold centered on his conduct in two separate cases. The first case dates back to 1991, when Grotewold represented the administrator of the estate of Annie Vande Geest Hulbert, who was murdered by her husband. The decedent was twenty-three years old, and was survived by a young daughter. The administrator of the estate was the father of the decedent, who was also the guardian and conservator of the surviving daughter. Annie's husband was sentenced to serve a life term of imprisonment for the murder.

Grotewold opened the estate in December 1991. The estate remained open for nearly nine years, with little work done during the first eight and one-half years to bring the matter to a conclusion. The estate was closed in April 2000, after the district court appointed an attorney to serve as guardian ad litem for Annie's daughter, the sole heir, to assist Grotewold in completing the work necessary to close the estate.

Grotewold neglected a variety of matters during the probate proceedings. He failed to take the necessary steps to publish a notice to creditors. He delayed payment of an uncontested claim filed in the estate for over five years, and failed to obtain a receipt or satisfaction of the claim after it was finally paid. He did not file the final report until October 1999 and failed to include an accounting in the report. He also failed to file the inheritance tax return until January 2000. The final settlement to the sole heir was not made until April 2000. Grotewold also filed incomplete interlocutory reports for several years while the estate was open.

In addition to the neglect, Grotewold misrepresented the status of the estate to the district court. In a report filed with the district court on October 15, 1999, Grotewold falsely stated that the Iowa Department of Revenue acquittance was on file. At the time Grotewold made the representation, he had not filed the tax return. When questioned by the district court about the absence of the acquittance in the court file, Grotewold acknowledged he never received an acquittance, and he told the district court that the Department of Revenue must have never received the tax return. Grotewold also told the district court he had prepared and filed new returns. However, the tax returns were not filed until January 2000.

The second case involved a small claims action. In that matter, Grotewold met with an individual named Jerry Fowler in his law office on December 4, 2000. Fowler and his wife had been sued by their former landlord for unpaid rent, and an answer to the petition was due by December 10, 2000. Fowler sought Grotewold to represent him in the case. An answer was not timely filed and a default judgment was entered against the Fowlers. Grotewold subsequently filed an answer and

counterclaim on behalf of the Fowlers on January 17, 2001, but took no further action to set aside the default. When confronted with his failure to file a timely answer, Grotewold maintained that he had not agreed to represent the Fowlers until they paid a $150 retainer to him. Fowler disputed such a condition, and Grotewold failed to satisfactorily explain the reason for filing a late answer on behalf of the Fowlers without receipt of the retainer or any other communication from the Fowlers following the December 4 meeting.

Separate complaints were filed against Grotewold for his conduct in both cases. The Board first notified Grotewold of the complaint concerning his activities in the estate proceedings on May 2, 2000, and requested a response. Grotewold failed to respond to the notice as well as two follow-up notices from the Board.

Grotewold was notified of the small claims complaint on March 26, 2001. He failed to respond to the notice, as well as a second notice.

Grotewold suffers from depression that began to reveal itself in 1998, but probably began much earlier in more subtle ways. The depression experienced by Grotewold immobilized and overwhelmed him at times, and he literally was unable to perform his work for weeks at a time. He was also overcome by feelings of hopelessness. At times, he looked gaunt and disheveled. In October 1998, Grotewold discovered his secretary embezzled approximately $190,000 from his trust account. The embezzlement only deepened his depression, as did the filing of the complaint against him in the estate case.

In February 2001, Grotewold returned from a vacation and found himself unable to muster the strength to go to his law office to work. He called the Board to turn in his license to practice law, and was referred to the director of the Lawyers Helping Lawyers program. Grotewold promptly sought the assistance of a mental health professional who began to treat Grotewold for his mental illness. Grotewold was diagnosed with major depression.

Medication and counseling have helped Grotewold control his depression. He also has friends and family members who support and help him. His treating physician believes he has "almost returned to normal." Grotewold attributes some of his conduct that resulted in the complaints to his untreated depression. Grotewold believes in retrospect that he suffered from deep depression long before the embezzlement but was unaware of it. Additionally, there was some evidence to suggest that the secretary who embezzled from Grotewold's trust account may have purposely failed to mail the estate tax returns prepared by Grotewold.

The Commission found Grotewold committed misconduct in the estate and small claims cases. *See* DR 1–102(A)(5), (6) (conduct that adversely reflects on fitness to practice law and conduct prejudicial to administration of justice); DR 6–101(A)(3) (neglect of client's legal matters); DR 7–101(A) (failure to represent client zealously). It also found Grotewold made misrepresentations to the district court in the estate case, although it found that the misrepresentations resulted from sloppy, casual conduct, not an intent to deceive. *See* DR 1–102(A)(4) (conduct involving misrepresentation). Finally, the Commission found Grotewold committed misconduct by failing to respond to the inquiries of the Board. *See* DR 1–102(A)(5), (6). The Commission recommended Grotewold receive a public reprimand.

**II. Scope of Review.**

Our scope of review is well established. We review an attorney disciplinary

proceeding de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford,* 625 N.W.2d 672, 679 (Iowa 2001). We are not bound by the findings of the Commission, although we give them weight. *Id.* "We also respectfully consider the discipline recommended by the Commission, but we are not bound by [it]." *Id.* The Board has the burden to prove "disciplinary violations by a 'convincing preponderance of the evidence.' " *Id.* (citation omitted).

### III. Violations.

■ We agree Grotewold violated the Iowa Code of Professional Responsibility as determined by the Commission. First, Grotewold neglected a client matter by the manner in which he served as attorney for the executor. *See* DR 6–101(A)(3). He repeatedly failed to perform required functions as attorney for the executor, repeatedly failed to meet deadlines, and failed to close the estate within a reasonable period of time. Our law contemplates that an estate proceeding should be closed within three years following notice to creditors. *See* Iowa Code § 633.473 (2001) (estate must be closed within three years of second notice to creditors unless the court orders otherwise); Iowa R. Prob. P. 6 (personal representative must file interlocutory report identifying work remaining to be done in the estate and the estimated time to complete the work if the final report is not filed within eighteen months after the second notice to creditors). His dilatory conduct was a disservice to his client and others, as well as to the administration of justice. *See* DR 1–102(A)(5), (6).

Grotewold also neglected a client matter by failing to file a timely answer in the Fowler case and failing to move to set aside the default judgment. *See* DR 6–101(A)(3); DR 7–101(A). Grotewold failed to perform these important tasks after as-

suming the responsibility to represent the Fowlers.

■ Grotewold also misrepresented the status of the estate to the district court in violation of DR 1–102(A)(4). Although his conduct may have related to his casual, lax mannerism, and perhaps his state of depression, it still constituted misrepresentation. *See Hyler v. Garner,* 548 N.W.2d 864, 871 (Iowa 1996) (intent to deceive may be shown when the speaker either has actual knowledge of the falsity or speaks with reckless disregard). We recognize negligent misrepresentation does not constitute a violation of DR 1–102(A)(4), and therefore misstatements resulting from oversight or haste do not constitute misrepresentations. *Comm. on Prof'l Ethics & Conduct v. Bitter,* 279 N.W.2d 521, 526 (Iowa 1979). On the other hand, recklessness can support fraudulent misrepresentation. *See Hyler,* 548 N.W.2d at 871. We have said that false statements cannot be excused on the basis of a "casual[ ] unawareness of the truth." *Comm. on Prof'l Ethics & Conduct v. Ramey,* 512 N.W.2d 569, 571 (Iowa 1994). Our system of justice requires "absolute reliability and an impeccable reputation for honesty" by its officers. *Id.* At best, Grotewold's misinformation to the court that the uncompleted tasks in the estate had been completed was based on hope and an intention that those tasks would eventually be completed. Yet, his conduct did not result from negligence, but his casual, reckless disregard for the truth. Grotewold engaged in conduct involving misrepresentation in violation of DR 1–102(A)(4), (5).

Grotewold acknowledged he failed to timely respond to the Board. This conduct violates DR 1–102(A)(5), (6).

### IV. Discipline.

■ In determining the appropriate discipline in each case, "we consider 'the na-

ture of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the [bar] as a whole, and the respondent's fitness to continue in the practice of law.'" *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel,* 634 N.W.2d 652, 655 (Iowa 2001) (citations omitted). "We also take into account '[any] aggravating and mitigating circumstances.'" *Id.* (citation omitted).

 "[T]here is no standard discipline for a particular type of attorney misconduct." *Id.* Yet, when neglect of a client's legal matters is the principal violation, "discipline generally ranges from a public reprimand to a six-month suspension." *Id.* Misrepresentations, on the other hand, warrant a more severe sanction than neglect. *In re Inquiry Concerning McCormick,* 639 N.W.2d 12, 17 (Iowa 2002); *Hohenadel,* 634 N.W.2d at 655. Considering the importance of honesty to our profession, we have stated that misrepresentation by a lawyer "constitutes a grave and serious breach of professional ethics" and generally results in "a lengthy suspension." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein,* 603 N.W.2d 574, 576 (Iowa 1999).

 Clearly, misrepresentation is the most serious violation in this case. The concept of such conduct is repulsive to our system of justice and its very presence within our profession supports serious discipline, justified by the need to deter the offender and others, protect the public, and maintain the reputation of the profession. *See In re McCormick,* 639 N.W.2d at 17. Yet, against the backdrop of depression, misrepresentation can take on added meanings, as can neglect. This backdrop complicates the imposition of discipline and requires us to fully examine the impact of depression.

The evidence in this case reveals that serious depression often results from chemical imbalances in the brain that cause those afflicted to be plagued by growing and overwhelming feelings of hopelessness and despair. It also reveals that depression can take hold of a person without his or her knowledge or understanding of the need for treatment. The same type of evidence revealed in this case has been the subject of articles in professional journals describing the impact of depression on lawyers. *See* Gary L. Bakke, *Brainstorm, My Experience with Depression,* 61 The Iowa Lawyer, Mar. 2001, at 5, 5–7 (personal composition by President of the Wisconsin State Bar Association) [hereinafter Bakke]; *see also* Dennis W. Kozich, *Status of Stress in the Legal Profession,* 70 Wis. Lawyer, May 1997, at 31, 31 (discussing stress-related problems connected with the legal profession); Gregory J. Van Rybroek, *Lawyers and Stress: An Anti–Quick Fix View,* 70 Wis. Lawyer, May 1997, at 30, 30–31 (same). *See generally* Connie J.A. Beck et al., *Lawyer Distress: Alcohol–Related Problems and Other Psychological Concerns Among A Sample of Practicing Lawyers,* 10 J.L. & Health 1, 1–60 (1995–96) (compilation of results from extensive study of psychological distresses, including depression, and additional afflictions affecting lawyers) [hereinafter Beck et al.]. We also observed the same type of evidence in a recent attorney disciplinary proceeding. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Erbes,* 604 N.W.2d 656, 658 (Iowa 2000). With the state of mind brought on by depression, it is understandable how neglect, and even excuses for nonperformance, can become part of the disease. *See* Beck et al., 10 J.L. & Health at 1–5; Bakke, 61 The Iowa Lawyer, Mar. 2001, at 6. Thus, unethical professional conduct can double as a symptom of depression. *See* Beck et al., 10 J.L.

& Health at 2. Moreover, these symptoms too often appear before the disease is diagnosed and treatment is sought. *See* Bakke, 61 The Iowa Lawyer, Mar. 2001, at 5–6.

■ While depression does not minimize the seriousness of unethical conduct, it can impact our approach to discipline. We continue to maintain a firm position that the personal problems of a lawyer that may contribute to the commission of unethical conduct do not excuse the misconduct. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams,* 623 N.W.2d 815, 818 (Iowa 2001); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson,* 595 N.W.2d 132, 134 (Iowa 1999). Moreover, we have specifically applied this principle to depression. *See Adams,* 623 N.W.2d at 817–18 (characterizing lawyer's depression of fifteen to twenty years as a personal problem); *Thompson,* 595 N.W.2d at 134 (depression and alcoholism do not excuse unethical conduct). This approach is grounded in "our overriding obligation to the public which suffers the same" harm regardless of the underlying source of the conduct. *Comm. on Prof'l Ethics & Conduct v. Sytsma,* 405 N.W.2d 844, 845 (Iowa 1987). Nevertheless, personal circumstances such as depression are not ignored when we consider the sanctions to impose for the conduct. *See Erbes,* 604 N.W.2d at 659. Instead, we consider all circumstances in imposing discipline upon lawyers, and have considered personal afflictions and subsequent recovery efforts in the imposition of sanctions, both in terms of fitness to practice law and as mitigating circumstances. *See Hohenadel,* 634 N.W.2d at 656–57 (unethical conduct involving neglect and misrepresentation attributable to a long battle with alcoholism warranted a four-month suspension where evidence included genuine efforts by the attorney to address the problem); *Erbes,* 604 N.W.2d at 659 (attorney successfully addressed debilitating depression and posed no threat to the public).

■ We must also consider the impact of depression on the goals of attorney discipline. The rationale for the imposition of sanctions as a deterrent to the offending lawyer, and others, from engaging in the conduct in the future loses some of its value when the conduct involved is the product of untreated mental illness. Similarly, when unethical conduct is the product of untreated mental illness, the protection of the public and the reputation of the profession can be vindicated by the diagnosis and successful treatment of the disease. Treatment in the form of medicine, counseling, and support often eliminates the state of mind responsible for the unethical conduct and paves a return to normalcy. *See* Bakke, 61 The Iowa Lawyer, Mar. 2001, at 6. When unethical conduct attributable to depression is aberrant, and not part of the normal disposition of a lawyer, the goals of discipline are not as easily applied as when unethical conduct stems from the normal activities of a lawyer.

■ In this case, Grotewold found himself trapped in a state of major depression for a considerable period of time. He had no known history of the disease, and no real understanding of the forces working against him. He was unaware of the seriousness of his condition and what he needed to do to overcome it. We think these are important factors. However, the full extent of depression as a mitigating circumstance in the imposition of discipline necessarily relates to the relationship between the unethical conduct and the depression. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rylaarsdam,* 636 N.W.2d 90, 92–93 (Iowa 2001) (unethical conduct occurred over a period of many years and predated diagnosis of major de-

pression); *Hohenadel,* 634 N.W.2d at 656–57 (unethical conduct was the consequence of alcoholism).

There was ample evidence in the record to explain the relationship between depression and neglect of professional obligations. Grotewold testified he would go to work and be unable to meaningfully perform any tasks for weeks at a time. He testified he was unable to even go to work at times. Yet, the evidence did not similarly explain the same relationship between the depression and the false statements, although it was apparent the two circumstances were co-existent. Furthermore, the judge to whom the misstatements were made testified Grotewold appeared and acted normal at the time. More importantly, Grotewold's defense before the Commission was that his statements to the district court were not false. He did not claim they were directly related to his depression. Finally, evidence of the onset of Grotewold's depression was largely confined to that period of time after 1998. Prior to the onset of depression, Grotewold had developed a reputation as a procrastinator, which seemed to adequately explain many of the acts of neglect in the estate case over the years.

Under these circumstances, we believe deterrence, public protection, and vindication of the profession are appropriately considered in imposing discipline. This is not to say Grotewold's depression is not a mitigating factor, but not enough to support the recommendation of the Commission of a public reprimand. *Comm. on Prof'l Ethics & Conduct v. O'Callaghan,* 436 N.W.2d 51, 51 (Iowa 1989) (Commission recommendation is not binding, but is given respectful consideration). The unethical conduct engaged in by Grotewold was not solely related to the onset of his undiagnosed major depression and was otherwise uncharacteristic of his manner

of practice. *See Rylaarsdam,* 636 N.W.2d at 92–93 (diagnosis of depression predated unethical conduct); *Hohenadel,* 634 N.W.2d at 653, 656–57 (alcoholic lawyer refused help in the past and engaged in prior unethical conduct). Yet, we believe the growing state of depression experienced by Grotewold played some role in the matters involved in this case, in varying degrees. Thus, we consider the depression experienced by Grotewold as a mitigating factor in the imposition of discipline. We also recognize Grotewold has received successful treatment and is fit to practice law. We suspend Grotewold's license to practice law for sixty days. This discipline appropriately considers the vast competing circumstances represented in this case.

The suspension imposed applies to all facets of the practice of law. Ct. R. 118.12. Reinstatement is governed by the automatic reinstatement provisions of Court Rule 118.12. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stowers,* 626 N.W.2d 130, 134 (Iowa 2001). Costs of this action shall be taxed to Grotewold pursuant to Court Rule 118.22.

**LICENSE SUSPENDED.**