# In the Iowa Supreme Court

No. 24–0424

Submitted September 12, 2024—Filed October 4, 2024

**Iowa Supreme Court Attorney Disciplinary Board,**

Complainant,

vs.

**Rebecca C. Sharpe,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends revocation of the attorney's law license based on violations of our attorney ethics rules. **License Revoked.**

Christensen, C.J., delivered the opinion of the court, in which all participating justices joined. Waterman, J., took no part in the consideration or decision of the case.

Tara van Brederode, Alexis Grove, and Robert A. Howard, Des Moines, for complainant.

Rebecca C. Sharpe, Bettendorf, pro se, and Joshua J. McIntyre (until withdrawal) of Lane & Waterman LLP, Davenport, for respondent.

**Christensen, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (the Board) charged an Iowa attorney with violations of the Iowa Rules of Professional Conduct and Iowa Court Rules after she mishandled two client matters and her client trust account. The Iowa Supreme Court Grievance Commission (the commission) determined that the attorney committed various violations of our ethics rules and recommended revocation of her license. Upon a de novo review of the record, we revoke the attorney's license.

### I. Background Facts and Proceedings.

Rebecca Sharpe was admitted to practice law in Iowa in 2009. Although she does not have a history of ethical violations, this court suspended Sharpe's license because of a physical disability that prevented her from discharging her professional responsibilities associated with the practice of law on March 22, 2023. Her license remains suspended. This case arises from Sharpe's representation of various clients and the mismanagement of her client trust account in the following matters prior to that suspension.

**A. Haack Matter.** The first client matter concerns Sharpe's designation as the attorney to the estate of Evelyn Haack, who passed away on January 16, 2018. Sharpe was designated as the estate's attorney on February 23 by the estate's executor and Haack's niece, Carolyn McConnell. Several issues arose during Sharpe's designation as the estate's attorney.

First, Haack's last will and testament devised 5% of her estate to the St. Paul Lutheran Church Endowment Fund (the Church), where Haack had been a member for 55 years. The intended gift was approximately $100,000, but the Church never received notice of the probate proceeding or its intended bequest. The Church only learned of the possibility of an intended bequest about three years after the estate was opened when a friend of the decedent inquired

about it to the Church. Ultimately, the Church never received any money from the estate. A resolution concerning the intended bequest was reached between the Church and Sharpe on October 23, 2023.

Prior to the resolution, Sharpe took several steps to hide the bequest from the Church. A $100,000 check from the client trust account was written for the Church but never delivered. Additionally, when McConnell checked on distributions in July 2019, Sharpe claimed there were not enough funds for the $100,000 devise to the Church, which was not true. Sharpe also hid the bequest from the probate court. The first and final report by the executor was filed on August 26 and did not list the Church as a beneficiary or include a waiver from the Church. The Church was included, however, in the amended report and inventory filed with the probate court on the same day and was included in the report and inventory sent to other beneficiaries. Lastly, in January 2021, a certified public accountant (CPA) enlisted by Sharpe to help with the estate again inquired about the Church's gift and Sharpe did not respond.

An issue also arose with the estate taxes. On April 5, 2018, Sharpe contacted Haack's accountant, Randy Linn, to file the necessary returns. She informed Linn that she would presume he was handling Haack's personal taxes and the estate taxes unless he responded otherwise. Sharpe also stated that once the estate was closed, she would reach out with final documents for filing a United States estate tax return (Form 706) and Iowa inheritance tax return (Form IA 706). Linn did not respond to Sharpe's message. Sharpe contacted Linn once more on January 17, 2019, stating that she would continue to drop off documents for the estate taxes and documents for the final tax returns once the estate closed. Despite these statements to Linn, on March 14, Sharpe filed an application with the probate court that stated, "A United States Estate Tax

Return (Form 706) and the Iowa Inheritance/Estate Tax Return (Form IA 706) are not required to be filed."

The estate was closed on August 27 without any estate taxes being filed. Sharpe once again contacted Linn on September 1 and did not receive a response. Linn passed away on February 7, 2020, without having filed any taxes for the Haack estate.

In early 2021, Sharpe hired a CPA to file the estate taxes. The delay in filing resulted in the Iowa Department of Revenue assessing approximately $51,000 in penalties and interest on the estate.[1] In total, the estate owed $244,187.70 in taxes. In February, Sharpe paid $224,983.54 to the State of Iowa Treasurer out of the client trust account, and McConnell personally paid the remaining $19,204.16 without reimbursement from Sharpe. On August 12, 2022, the Iowa Department of Revenue certified that the Iowa inheritance tax was paid in full—almost three years after the estate closed.

The final issue concerns Sharpe's attorney fees as the designated attorney for the estate. On March 14, 2019, the probate court granted Sharpe's request for partial attorney fees in the amount of $19,073.27. Sharpe withdrew this amount from the client trust account on or about March 20. On August 26, Sharpe requested additional extraordinary fees in the amount of $89,709.29. The court again granted this request, allowing Sharpe to claim a total of $108,782.56 in attorney fees. From August 2019 to April 2021, Sharpe transferred money out of the estate labeled as "Trust Funds Probate Attorney Fees" and "Operating Account" in the client ledger. Sharpe made a total of twenty transfers to her firm ranging from $1,000 to $15,000. In total, the amount

---

[1] A 10% penalty was assessed on the estate—a total of $19,318.65—and the estate owed $31,682.58 in interest.

transferred from the estate was $65,290.71 more than the awarded attorney fees. Sharpe used these funds for personal expenses.

As Sharpe transferred excess funds to herself, she concealed her actions from McConnell. On March 1, 2021, Sharpe informed McConnell that there was no money left in the estate, so McConnell could not be reimbursed for an expense. Sharpe further claimed, "I have not been paid my entire fee because I was worried there wouldn't be enough money for taxes." At the time of that message, Sharpe had already overpaid herself by $54,290.71. When McConnell went to collect the estate's file on August 31, Sharpe produced two client ledgers that omitted all attorney fees claimed by Sharpe between August 28, 2019, and January 9, 2020, which totaled $91,500. Ultimately, when the estate taxes were finally paid, the Haack account had a negative balance because of Sharpe's excessive withdrawals.

**B. Client Trust Account Matters.** Sharpe was a partner and partial owner of Aitken, Aitken & Sharpe, P.C. She was a signatory on the firm's client trust account and was primarily responsible for the firm's bookkeeping. In late 2020, the Client Security Commission (CSC) undertook an audit of Sharpe's client trust account that concluded in April 2022. The audit disclosed Sharpe's failure to prepare monthly triple reconciliations, failure to provide clients written notice at or prior to a withdrawal from the client trust account, two stale client accounts, a negative balance of $46,379.91 in the Haack client account in April 2021 that was not remedied until March 2022, two other negative client subaccount balances, and commingled funds. Sharpe also overdrew the client trust account twice, causing an overall negative balance of $3,475.55 in April 2021, and $660.92 in August 2021.

**C. This Proceeding.** The Board filed a three-count complaint on May 1, 2023, and an amended complaint on September 20, alleging Sharpe violated

several Iowa Rules of Professional Conduct and Iowa Court Rules. Count I concerns the Haack Matter and alleges Sharpe violated Iowa Rules of Professional Conduct 32:1.3; 32:1.15(a), (d), (f); 32:3.3(a)(1); and 32:8.4(b), (c). Count II concerns an adoption proceeding and alleges Sharpe violated Iowa Rules of Professional Conduct 32:1.3; 32:1.4(a)(3), (b); and 32:1.5(b). Count III concerns client trust account matters and alleges Sharpe violated Iowa Rule of Professional Conduct 32:1.15(a), (c), (f), and Iowa Court Rules 45.1; 45.2(2), (3)(*a*)(4), (3)(*a*)(9); and 45.7(3), (4). Sharpe filed an answer to the original complaint denying all alleged violations.

Sharpe was generally unresponsive throughout the proceedings. After discovery was served on Sharpe, she was granted an extension, but the Board still had to file motions to compel discovery and for sanctions when Sharpe did not cooperate. Sharpe also requested that her hearing be continued twice, both of which were granted. She stated that health complications were the reason for the first requested continuance. After the continuance was granted, the Board found contradictory evidence to her health-related claims, which resulted in Sharpe's attorney withdrawing from the matter. Sharpe's second request for a continuance was to grant her time to retain a new attorney and again for health-related reasons. Eventually, the parties filed a partial stipulation of facts on December 5 and waived a formal hearing. Only the Board filed a poststipulation brief, and neither party appealed the decision of the commission.

In the Haack Matter, the commission determined that Sharpe violated each rule the Board alleged in its complaint. First, the commission concluded Sharpe violated rule 32:1.3, which requires a lawyer to act with reasonable diligence and promptness when representing a client, by failing to promptly file the Haack estate's tax returns, resulting in large financial consequences for the estate. Second, the commission determined that Sharpe violated

rule 32:3.3(a)(1), which prohibits a lawyer from knowingly making a false statement to a tribunal, by stating to the probate court that tax returns were not required to be filed for the Haack estate when she knew the opposite was true. The commission then concluded that Sharpe violated rule 32:1.15(a), which requires that client funds be kept in a separate account and not commingled with the lawyer's property, by taking $65,290.71 from the Haack estate that she was not entitled to.

The commission also concluded that Sharpe violated rule 32:1.15(d), which requires a lawyer to give a client or third-party prompt notice upon receiving funds that belong to them and promptly delivering the property, by not notifying the Church of their bequest and not delivering the bequest. Rule 32:1.15(f) was addressed later by the commission in relation to the client trust account matter. Finally, the commission concluded that Sharpe violated rule 32:8.4(b), which makes it a violation to commit a criminal act that reflects adversely on the lawyer's honesty or fitness, and rule 32:8.4(c), which prohibits a lawyer from engaging in conduct that involves dishonesty. Sharpe violated these rules by converting the Haack funds and trying to conceal her conduct.

In connection with the client trust account matters, the commission concluded that Sharpe violated eight of the Iowa Rules of Professional Conduct and Iowa Court Rules alleged in the Board's complaint. Based on the CSC audit, the commission concluded that Sharpe violated rule 32:1.15(a) and rules 45.1 (a lawyer may not commingle client funds with the lawyer's own funds), 45.2(3)(*a*)(4) (a lawyer must maintain current financial records showing disbursements of funds to the lawyer or on the lawyer's behalf), 45.2(3)(*a*)(9) (a lawyer must maintain current financial records showing monthly client ledger balances and reconciliation of client trust accounts), and 45.7(4) (a lawyer must notify the client in writing of any fee withdrawal, no later than the date of the

withdrawal). The commission also determined Sharpe violated rule 32:1.15(c) (legal fees paid in advance must be deposited into the client trust account and may only be withdrawn as the fee is earned) and rule 45.7(3) (a lawyer must deposit advance fees and expenses into the client trust account and may not withdraw the fee unless it is earned or the expense is incurred) by withdrawing fees from the Haack client trust account without authorization from the probate court. By violating the Iowa Court Rules, Sharpe also violated Iowa Rule of Professional Conduct 32:1.15(f), which states that client trust accounts are governed by the Iowa Court Rules. Lastly, the Board in its complaint alleged that Sharpe violated rule 45.2(2), which requires a lawyer to promptly deliver any funds in the lawyer's possession that a client or third party is entitled to and render a full accounting; however, the Board did not discuss the rule violation in its brief and the commission did not issue a ruling on the violation.

The Board also charged Sharpe with various violations in relation to an adoption proceeding. Pursuant to the stipulated facts, the Board dismissed the charges concerning rules 32:1.3, 32:1.4(a)(3), and 32:1.4(b). The Board still alleged that Sharpe violated rule 32:1.5(b), which requires the basis or rate of an attorney's fee to be communicated to the client within a reasonable time after representation begins. The commission determined that Sharpe violated this rule by communicating her fee arrangement to the client after most of the work had already been completed on the adoption matter and threatening to postpone the termination hearing when the client questioned Sharpe's fees.[2] We do not

---

[2]During an emergency adoption proceeding, Sharpe neglected to timely send an invoice to her client detailing the attorney fees for which the client would be responsible. Roughly two weeks after Sharpe promised to send an invoice, and one day before a parental termination hearing, she sent the client a bill for approximately $10,000. On the day of the hearing, Sharpe threatened to postpone after the client questioned her fees. The commission determined this conduct violated rule 32:1.5(b).

analyze the commission's decision as it is not pertinent to the sanction we impose for Sharpe's actions regarding client funds.

The commission recommended that Sharpe's license be revoked. When making its decision, the commission concluded that this court regularly revokes attorney licenses for conversion of client funds and that mitigating and aggravating factors do not need to be considered when funds are converted. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 500 (Iowa 2017). Still, the commission noted a potential mitigating factor of Sharpe's ongoing health issues but recognized that the issues did not overlap with her conduct. Aggravating factors were also noted as Sharpe's conduct resulted in client harm, multiple rule violations, misrepresentations to a court, and a failure to cooperate with the Board.

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 776 (Iowa 2016). "The Board must prove attorney misconduct by a convincing preponderance of the evidence," which is "more demanding than proof by preponderance of the evidence, but less demanding than proof beyond a reasonable doubt." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845 N.W.2d 31, 33 (Iowa 2014). Parties are bound by factual stipulations, "which we interpret with reference to their subject matter and in light of the surrounding circumstances and the whole record." *Johnson*, 884 N.W.2d at 777. We may "impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Janssen*, 981 N.W.2d 1, 6 (Iowa 2022) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 582 (Iowa 2019)).

**III. Analysis.**

**A. Violations.**

1. *Misappropriation.* Rule 32:8.4(b) prohibits an attorney from "commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. of Prof'l Conduct 32:8.4(b). This court considers the following factors when determining if rule 32:8.4(b) has been violated: "the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Aeilts*, 974 N.W.2d 119, 125 (Iowa 2022) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 40 (Iowa 2011)). An attorney does not have to be criminally convicted to violate this rule. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Fischer*, 973 N.W.2d 267, 273 (Iowa 2022) (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kozlik*, 943 N.W.2d 589, 595 (Iowa 2020)). We have repeatedly held "[a] lawyer who commits a theft of funds engages in conduct involving moral turpitude, dishonesty, and conduct that adversely reflects on the lawyer's fitness to practice law." *Id.* (quoting *Kozlik*, 943 N.W.2d at 595).

Additionally, rule 32:8.4(c) prohibits an attorney from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. of Prof'l Conduct 32:8.4(c). An attorney must have "acted with 'some level of scienter' rather than mere negligence" to violate this rule. *Aeilts*, 974 N.W.2d at 126 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Beauvais*, 948 N.W.2d 505, 515 (Iowa 2020)). When considering if rule 32:8.4(c) has been violated, "[t]he key question we must answer is whether the effect of the lawyer's conduct is to mislead rather than to inform." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marzen*, 949 N.W.2d 229, 239 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v.*

*Barry*, 908 N.W.2d 217, 226 (Iowa 2018)). "An attorney's 'casual, reckless disregard for the truth' also establishes sufficient scienter to support a violation of the rule." *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Muhammad*, 935 N.W.2d 24, 38 (Iowa 2019)).

Sharpe committed a theft from the Haack client trust account by intentionally converting client property to her own use in violation of rule 32:8.4(b) and (c). Under Iowa law, a theft is committed when a person:

> Misappropriates property which the person has in trust, or property of another which the person has in the person's possession or control . . . by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, . . . or appropriates such property to the person's own use, when the owner of such property is known to the person.

Iowa Code § 714.1(2) (2019). Sharpe's actions violated Iowa law by converting over $65,000 she was entrusted with from the Haack estate without court authorization and with no showing of a colorable future claim. *See id.*; *see also id.* § 714.2(1) ("The theft of property exceeding ten thousand dollars in value . . . is theft in the first degree.").

Further, Sharpe concealed her actions showing she intended to convert the funds and, in the process, caused client harm. Once Sharpe began converting funds, she took steps to hide her theft by taking the money in small increments during an almost two-year timeframe and providing the executor of the estate with ledgers that omitted the withdrawals. Sharpe also misrepresented the withdrawals to the auditor of her client trust account and avoided a direct question about the funds from the CPA hired to complete the estate's taxes. Sharpe's conduct demonstrates a calculated scheme to withhold the Church's bequest so that she could convert the funds in the Haack account to her own personal use. We hold that Sharpe violated Iowa Rule of Professional Conduct 32:8.4(b) and (c).

2. *Client funds.* Rule 32:1.15(a) requires that "[a] lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account." Iowa R. of Prof'l Conduct 32:1.15(a). An attorney violates this rule by misappropriating client funds that the attorney has no legitimate claim to. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Earley*, 933 N.W.2d 206, 213 (Iowa 2019). The Iowa Court Rules reiterate the need to keep client funds in a separate trust account. Iowa Court Rule 45.1 requires:

> Funds a lawyer receives from clients or third persons for matters arising out of the practice of law in Iowa must be deposited in one or more identifiable interest-bearing trust accounts at a financial institution with a branch geographically located in Iowa. Other property of clients or third persons must be identified as such and appropriately safeguarded.

Sharpe misappropriated funds she was not entitled to and consequently commingled client funds with her own. Sharpe was entitled to only $108,782.56 in attorney fees and has shown no evidence that she had a colorable future claim to any other fees. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 171 (Iowa 2019) ("While the Board has the burden of showing that a misappropriation of funds occurred, the attorney has the burden of providing evidence of a colorable future claim to the funds."). Over the course of two years, Sharpe took a total of $174,073.27 from the estate—$65,290.71 more than what she was granted by the probate court and commingled these funds with her own property. Additionally, the audit revealed that Sharpe kept large amounts of firm funds in the client trust account. We conclude that Sharpe violated Iowa Rule of Professional Conduct 32:1.15(a) and Iowa Court Rule 45.1.

Rule 32:1.15(d) states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by

> law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Iowa R. of Prof'l Conduct 32:1.15(d). An attorney must promptly deliver any funds their client is entitled to receive, so "[a] delay of 'several months' violates this rule." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 439 (Iowa 2012) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 632 (Iowa 2009)). Further, an attorney's misappropriation of client funds for personal reasons will violate this rule. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009). Iowa Court Rule 45.2(2) also requires an attorney to deliver to the client any funds the client is entitled to receive and render a full accounting of the delivery.

Sharpe violated rule 32:1.15(d) and rule 45.2(2) by withholding the approximately $100,000 bequest from Haack's will to the Church. Haack passed away in 2018 and the Church did not receive notice of the bequest until January 2021 when a friend of Haack's inquired about the gift. The Church never directly received notice from Sharpe and never received the gift from the estate. Sharpe instead had to settle the matter with the Church in 2023.

Further, Sharpe actively took steps to conceal her actions by writing a check to the church that she never delivered, listing the Church in the amended report and inventory that was filed with the probate court, and ignoring questions about the bequest. Sharpe withheld the funds from the Church for years so that she could misappropriate the property for her own use. We conclude that Sharpe violated Iowa Rule of Professional Conduct 32:1.15(d) and Iowa Court Rule 45.2(2).

Rule 32:1.15(c) states that attorneys must deposit legal fees and expenses into a client trust account until they are earned by the attorney. Iowa R. of Prof'l Conduct 32:1.15(c). Iowa Court Rule 45.7(3) reiterates this requirement: "A lawyer must deposit advance fee and expense payments from a client into the trust account and may withdraw such payments only as the fee is earned or the expense is incurred." Sharpe violated rule 32:15(c), and subsequently rule 45.7(3), by withdrawing funds from the Haack account without authorization by the probate court and without having earned the fees. Sharpe has violated Iowa Rule of Professional Conduct 32:1.15(c) and Iowa Court Rule 45.7(3).

3. *Diligence.* Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. of Prof'l Conduct 32:1.3. An attorney must handle client matters in a "reasonably timely manner" to act with reasonable diligence and promptness. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 667 (Iowa 2017) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 598 (Iowa 2011)). Further, "[n]eglect 'involves an attorney's failure to perform obligations assumed for the client, or a conscious disregard for the responsibilities a lawyer owes to a client.' " *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W. 2d 331, 335 (Iowa 2015) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 (Iowa 2011)). Rule 32:1.3 is generally not violated by missing one deadline; instead, neglect is committed by attorneys in estate matters when "[they] repeatedly fail[] to perform required functions as attorney for the executor, repeatedly fail[] to meet deadlines, and fail[] to close the estate within a reasonable period of time." *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002). This court has held in certain cases that an attorney assigned to an estate has been guilty of neglect when the

attorney fails to timely file estate taxes. *See, e.g., Bartley,* 860 N.W.2d at 335–36; *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Walker,* 712 N.W.2d 683, 684–85 (Iowa 2006); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Moonen,* 706 N.W.2d 391, 398–99 (Iowa 2005).

Sharpe's actions regarding the Haack estate amount to neglect and violate rule 32:1.3. In this case, Sharpe's attempts to contact Linn did not discharge her responsibility to ensure that the estate taxes were timely filed. In the factual stipulation, Sharpe admitted that she never received any contact from Linn or assurance that he was handling the taxes. She was aware the estate taxes had to be filed but continued to disregard the matter until Linn passed away. Even after the closing of the estate in August 2019, and Linn's death in February 2020, Sharpe did not enlist a new CPA to handle the matter until early 2021.

Sharpe's negligence resulted in penalties and interest being imposed on the estate. The penalties imposed were over $19,000, and the interest incurred was over $31,000. Sharpe then allowed the executor, McConnell, to pay part of the taxes and penalties without reimbursement. Overall, Sharpe's actions resulted in the Iowa taxes not being finalized until almost three years after the estate closed and caused client harm. We conclude that Sharpe neglected her professional duties in violation of Iowa Rule of Professional Conduct 32:1.3.

4. *Misrepresentation to the court.* Under rule 32:3.3(a)(1), "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Iowa R. of Prof'l Conduct 32:3.3(a)(1). "Knowingly" is defined as "actual knowledge of the fact in question" and "knowledge may be inferred from circumstances." *Id.* r. 32:1.0(f). This rule is violated when an attorney knowingly misrepresents information in probate court filings. *See, e.g., Bartley,* 860 N.W.2d

at 337; *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 105–08 (Iowa 2012).

Sharpe's statements in the application for partial attorney fees filed with the probate court violated rule 32:3.3(a)(1). In the application, she stated that the 706 tax forms were not required to be filed for the Haack estate while making completely different representations to Linn. She told Linn multiple times that she understood that the estate would be required to file these forms and that she would send him the required documentation. Further, after Linn passed away, Sharpe enlisted a new CPA to have these forms filed, showing that she understood the forms were required.

Sharpe knowingly misrepresented the tax requirements of the estate to the probate court in an effort to receive partial attorney fees. Iowa Court Rule 7.2(4) dictates that she could not be partially compensated until the required taxes were prepared: "One half of the fees for ordinary services may be paid when the federal estate tax return, if required, and Iowa inheritance tax return, if required, are prepared." Sharpe misrepresented the tax requirements of the estate to the probate court to gain fees she had not yet earned and, in the process, disregarded her duties of candor to the court. *See id.*; Iowa R. of Prof'l Conduct 32:3.3(a)(1). We conclude that Sharpe violated Iowa Rule of Professional Conduct 32:3.3(a)(1).

5. *Recordkeeping.* Rule 32:1.15(a) requires attorneys to hold client property in a separate account and to maintain "[c]omplete records of such account funds and other property . . . for a period of six years after termination of the representation." Iowa R. of Prof'l Conduct 32:1.15(a). The Iowa Court Rules reinforce this requirement. Iowa Court Rule 45.2(3)(*a*)(4) and (9) states:

> A lawyer who practices in this jurisdiction must maintain current financial records as provided in these rules and required by Iowa Rule of Professional Conduct 32:1.15. The following records must be retained for each client trust account for a period of six years after termination of the representation:

. . . .

> (4) Copies of accountings to clients or third persons showing the disbursement of funds to them or on their behalf.

> . . . .

> (9) Copies of monthly lists of individual client ledger balances and monthly triple reconciliations of bank statement balance to receipt and disbursement journal balance to sum of individual client ledger balances.

Further, Iowa Court Rule 45.7(4) states, "A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal."

Based on the parties' factual stipulation, Sharpe has violated these rules. The audit demonstrated that Sharpe failed to provide written notice to clients at or before making withdrawals from the client trust account, failed to perform monthly triple reconciliations, and failed to maintain complete, accurate records of her client matters. We conclude that Sharpe violated Iowa Rule of Professional Conduct 32:1.15(a) and Iowa Court Rules 45.2(3)(*a*)(4) and (9), and 45.7(4).

Finally, rule 32:1.15(f) states that "[a]ll client trust accounts shall be governed by chapter 45 of the Iowa Court Rules." Iowa R. of Prof'l Conduct 32:1.15(f). By violating several rules within chapter 45 of the Iowa Court Rules, Sharpe has violated rule 32:1.15(f).

**B. Sanction.** There is no standard sanction for misconduct in attorney disciplinary cases. *Aeilts*, 974 N.W.2d at 129 (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 591 (Iowa 2015)). For each case, we will consider the totality of the facts and circumstances. *Id.* (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Deremiah*, 875 N.W.2d 728, 737 (Iowa 2016)). To

reach the appropriate sanction, we consider a multitude of factors, including "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the attorney's fitness to continue practicing law, as well as any aggravating or mitigating circumstances." *Id.* (quoting *Bartley*, 860 N.W.2d at 337).

Although there is no standard sanction for attorney disciplinary cases, we have repeatedly held that converting client funds without a colorable future claim will result in revocation of the attorney's license. *See, e.g., Kozlik*, 943 N.W.2d at 599–600; *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Moran*, 919 N.W.2d 754, 760 (Iowa 2018); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kowalke*, 918 N.W.2d 158, 163 (Iowa 2018); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Carter*, 847 N.W.2d 228, 234 (Iowa 2014). "[T]here is no place in our profession for attorneys who convert funds entrusted to them. It is almost axiomatic that we revoke licenses of lawyers who do so." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 117 (Iowa 2014) (quoting *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994)).

This case is an egregious example of converting client funds in violation of our professional rules. Sharpe converted $65,290.71 for her own personal use and has presented no evidence of a colorable future claim to the funds. It does not matter that her firm later reimbursed part of the funds to the client trust account or that Sharpe eventually settled with the Church concerning its bequest. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 182 (Iowa 2014) (citing *Carter*, 847 N.W.2d at 232–34; *Thomas*, 844 N.W.2d at 117–18) ("[A]n attorney crosses an important line when he or she misappropriates or converts client funds without a 'colorable future claim' to those funds. . . . Later restitution of client funds does not preclude us from revoking the attorney's

license."). The commission recommended that Sharpe's license be revoked, and we agree that revocation is the appropriate sanction.

Further, we need not consider mitigating and aggravating factors when an attorney has converted client funds with no colorable future claim. *Kozlik*, 943 N.W.2d at 600. Still, it should be noted that Sharpe's actions resulted in multiple rule violations, caused client and third-party harm, and her lack of cooperation with the Board prolonged the commission's proceedings.

### IV. Conclusion.

We revoke Sharpe's license to practice law in Iowa. All costs of this proceeding are assessed against her under Iowa Court Rule 36.24(1). Under our rules, Sharpe may apply for readmission after a period of at least five years with a showing that "the applicant is of good moral character and is in all respects worthy of readmission to the bar." Iowa Ct. R. 34.27.

### License Revoked.

All justices concur except Waterman, J., who takes no part.